## Lenik Condemnation Case.

Argued April 20, 1961. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Walter T. ReDavid,* with him *ReDavid, Sparks & Orlowsky,* for appellants.

*Edward F. Cantlin,* with him *J. H. Ward Hinkson, Vincent P. McDevitt,* and *Robert P. Garbarino,* for appellee.

OPINION BY MR. JUSTICE BOK, June 26, 1961:

The Philadelphia Electric Company, having power of eminent domain, condemned certain interests of Mr. and Mrs. Lenik in a strip of their land in Delaware County so that the company might string its wires. It did not take the fee but only a right of way 700 feet long and 150 feet wide, plus trimming rights in two other strips, each 50 feet wide and lying along each side of the right of way so that it could prevent growing things from damaging the wires.

The parties failed to reach agreement about purchase and viewers were appointed on the company's

petition to assess damages. The award of the viewers was $7400 and both parties appealed to the court below, which empanelled a jury and tried the case. The jury gave the Leniks $13,500 and the company filed motions for judgment n.o.v. and for a new trial, the latter of which was granted for the reason that the verdict was against the weight of the credible evidence. It may be noted that the award of $7400 included damages for delay in payment while the verdict of $13,500 did not: this was proper enough, since there is evidence that Mr. Lenik threatened to blow up the company's installations and shoot its personnel. However, the company offered its bond, which Mrs. Lenik accepted, and the company entered the property and made its installations without incident. The property owners appealed to us.

One of the least assailable reasons for granting a new trial is the lower court's conviction that the verdict was against the weight of the evidence and that new process was dictated by the interests of justice. With reasons for this action given or appearing in the record, only a palpable abuse of discretion will cause us to overturn the court's action: *Bellettiere v. Philadelphia,* 367 Pa. 638, 81 A. 2d 857; *Elza v. Chovan,* 396 Pa. 112 (1959), 152 A. 2d 238; *Burd v. Pennsylvania Railroad Co.,* 401 Pa. 284 (1960), 164 A. 2d 324. And it is our duty to review the evidence to see whether error or injustice appears: *Nikisher v. Benninger,* 377 Pa. 564 (1954), 105 A. 2d 281.

When so flensed, the record fully supports the court's action.

The weak point in the case involves the evidence of value before and after condemnation. Mrs. Lenik, as owner, testified to value of $35,000 before the taking, and $20,000 or $21,000 after taking, or damages of $14,000 or $15,000. The professional appraiser for the owners gave values of $29,400 before and $18,200 after,

or damages of $11,200. Those for the company gave $30,000 before and $24,000 after, or damages of $6000, and $26,000 before and $20,500 after, or damages of $5500.

The interesting thing about these figures is the relatively narrow range of the values given the property before the taking. There was conflicting evidence whether the neighborhood was zoned industrial or residential, but it had not been developed and the highest and best use of the Lenik's property was that to which they were putting it, the growing of nursery stock. The professional opinions were noticeably close, and only the owner's estimate, which could be expected to be somewhat inflated, was a bit out of line. At the same time, ideas of the owners and their appraiser about value after the taking were remarkably close, while those of the company's two experts were also close but far below that of the owners and their expert.

The trouble therefore has to do directly with the value of what was taken and hence with the nature of what was taken. As said above, it was an easement and not the fee. What was left was the fee subject to the easement, and it is clear that the owners and their expert misunderstood it. Since the verdict was higher than the damage assessed by all of the experts and only a little lower than Mrs. Lenik's idea of what it was, it seems likely that the jury misunderstood it too.

There are no trial errors complained of, and the charge of the trial judge was clear. But it is equally clear that the owners failed to understand their rights. Mr. Lenik did not testify, but his wife did, and she said this: "Q. Now, what rights did you understand you and your husband would continue to have in the 150 foot strip that has been referred to here? A. Well, I know, I believe that we are still the owner although the Electric Company had the right to go through at any time and that we do not have the right to neither plant nor sell

to advantage or anything ourselves on that piece of ground. Q. I understand. Then you felt that because you were the owners in name, the depreciation was as great as it was because you felt you had really no actual dependable use of that ground; is that correct? A. That's right. The ground was absolutely useless to us. ... Q. And you felt that so far as that 250 feet were concerned, you could not any longer conduct your nursery business there; is that correct? A. That's right. ... Q. And from that time on, your husband felt that he had no right to go in there or tend them? A. Yes. Q. And that if he did he would be wasting his efforts— A. Yes. Q.—because the Company might cut them down at any time? A. There is that chance, yes. Q. So that he just let them grow wild, so to speak, in there? A. Well, we just didn't take any more care of them, spray them nor trim them as they need to be done."

It is obvious that the land, even when subjected to the company's easement, had value and could be usefully employed. Corn might have been grown, as it once had been, and shrubs and trees could have been planted and sold off before they became of a size that would either render them untransplantable or dangerous to the wires: a dozen other profitable uses can be thought of. Retaining the fee, the owners did not have to reach an agreement with the company over what they might want to do or even ask its permission. Neither did the company have to approach the owners if the latter's flora grew high enough to menace the wires: it could enter and chop them down. In sum, the parties may use the interests that they own in the land in a way consistent with such interests. The impression persists that the owners felt that by effectively abandoning the burdened land there would be more money from suing than from gardening.

The owners' expert, whom the court below was kind enough to absolve of inattention because of a recent personal sorrow, admitted that he had not read the resolution of condemnation. Nor had Mrs. Lenik, and her confusion resulting from her ignorance of just what was taken appears in the foregoing excerpt from her testimony concerninig her idea of the uselessness of the remaining land. As for her expert, he testified, erroneously: "Q. What was left to the owner as you understood it, with respect to that area 150 feet wide and some 700 feet deep? A. Well, the owner, with permission can use it. Q. And without permission? A. He has no right. Q. Has no right to use it for any purpose; is that correct? A. That's my—that's what I think of it."

In addition, this expert also testified that he did not know the condition of the buildings on the land when the condemnation occurred in December, 1955, but that he assumed, without verification, that they were in the same condition as when he first examined them in 1960. There was, he also said, a concrete block, stone, and frame house on the property but he did not know if it was there at condemnation: he gave it some, if not much, consideration in his opinion of value.

Appellants urge upon us the doctrine of *St. Clair Cemetery Assn. v. Commonwealth*, 390 Pa. 405 (1957), 136 A. 2d 85, but the case stands for only one thing, namely, that disparity in the expert's values, even if great, is not of itself ground for a new trial. One was granted in that case, when there was nothing more, and we reversed. Appellees urge the rule of *Baker v. Department of Highways*, 401 Pa. 512 (1960), 165 A. 2d 243. In that case there was the admission of incompetent testimony as well as disparity in values, and we upheld the grant of a new trial. That case is close authority for the one at bar.

The disparity of the evidence of after value is not a flaw in itself: its importance is as a clue to a basic confusion in the mind of both witnesses for the appellants and in the jury's as well because its verdict reflects the appellants' estimate of value. Their misconception of what was left after condemning an easement rather than the fee was obviously the flying buttress that supported the verdict and is demonstrable from the evidence. In such case the evidence is so unreliable that it is a court's duty to grant a second assay: *Gougher v. Hansler*, 388 Pa. 160 (1957), 130 A. 2d 150.

The court below was well within the law and within the orbit of its discretion. The order is affirmed.