545 A.2d 861

**SPANG & COMPANY, Appellant,**

**v.**

**UNITED STATES STEEL CORPORATION, Appellee.**

Supreme Court of Pennsylvania.

Argued March 10, 1988.

Decided July 12, 1988.

Reargument Denied Sept. 6, 1988.

16

Paul A. Manion, Kevin P. Lucas, Manion, McDonough & Lucas, P.C., Pittsburgh, for appellant.

Richard F. Lerach, Pittsburgh, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The issue presented is whether a trial court, sitting as fact-finder in a non-jury trial for breach of contract, may order a new trial limited to the issue of damages after initially entering a verdict for defendant on the grounds that, although defendant breached the contract which caused substantial damage to the plaintiff, plaintiff failed to prove the amount of damages with a reasonable degree of certainty to permit computation of a damage award. We answer that question in the affirmative. The essential facts are as follows.

Appellee, United States Steel Corporation (USS), is a Delaware corporation which, at all times relevant to this appeal, operated steelmaking facilities at its Lorain Works in Lorain, Ohio. USS manufactured steel products at the Lorain Works by the open-hearth method until 1971 and by the basic oxygen process method thereafter. Both methods produce slag, a mixture of metallic and non-metallic material, as a necessary by-product. Prior to September, 1961,

USS dumped its Lorain Works' slag at the East Fill dump site on its premises.

Spang & Company (Spang) is a Pennsylvania corporation with its principal place of business in Butler, Pennsylvania. Spang is successor in interest by merger to its former wholly owned subsidiary, Ferroslag Process Corporation. Spang developed and patented a commercially viable process for crushing and separating slag into metallic and non-metallic components. Recovered metal scrap can be reused in the steelmaking process or sold to third parties, and the non-metallic slag residue ("processed slag") can be used and sold to third parties for use as aggregate, ballast and other construction purposes.

USS and Spang (through Ferroslag) entered into a contract in June, 1960, which, through extensions and with various modifications, lasted until termination on February 28, 1982. Pursuant to contract, Spang built and operated a processing plant at the Lorain Work's East Fill site which processed slag both from current steelmaking operations and from mining slag previously dumped in the East Fill, which had been, to a limited extent, processed by other contractors. In 1962, the contract was amended to provide for erection of a screening plant to "size" the processed slag to certain specifications and to load and weigh processed slag for sale to third parties.

USS paid Spang upon delivery for the metal scrap recovered from the unprocessed slag, but the contract provided that USS would pay Spang for the non-metallic processed slag only upon sale by USS to third parties. During the 1961–1982 period, Spang's operating records indicate it processed 7,731,468 tons of crushed and sized non-metallic slag, of which USS sold 5,849,378 tons to its customers. Some of the unsold processed slag was placed in a "buffer strip" at the Lorain Works to help keep down dust and noise that had been annoying residents of a nearby municipality. Other such slag was used for roadways and other construction purposes on the site.

Spang was obligated to remove all structures and equipment from USS's premises upon termination of the contract. However, until 1969 no provision had been made for any payment to be made on processed slag unsold and remaining in USS's inventory upon termination of the contract. In 1969, the following clause was added which, in substantially similar form through subsequent amendments, remained part of the contract throughout:

In the event of termination of this Agreement for any reason, Contractor [Spang] shall be entitled to payment for all scrap and/or slag prepared and ready for delivery to Owner [USS] and accepted by Owner. ...

In 1981, USS decided not to renew its current contract with Spang, and notified Spang of its intent to terminate. However, the corporations extended the contract through February 28, 1982. A letter of October 23, 1981 from Spang to USS confirmed the terms of the extension agreement, and set "unit prices" for newly invoiced items in "the customary way," except for a "30% surcharge" which would be refunded in the event USS executed an additional five year contract with Spang. This letter further specified:

Products in Inventory

In the event that Ferroslag [Spang] is not awarded the new slag processing contract, the total value of all products in inventory will become immediately due and payable. The value of the inventoried products will be determined by multiplying the amount of products in tons by the then current unit price plus the surcharge. The most significant product in inventory is specification and non-specification sized slag at the East Fill. There are approximately 480,000 tons.

On November 11, 1981, Spang sent a follow-up letter to USS instructing USS to "delete the phrase *plus the surcharge* from the second sentence" in its letter of October 23, 1981, which phrase was included by error. Spang's intention was "that the surcharge apply only to those items which are associated with our current operations," not to "products in inventory" (i.e., not to previously processed but

unsold non-metallic slag). By letter of December 14, 1981, USS confirmed the extension of the contract through February 28, 1982, stating: "The extension was issued in accordance with verbal agreements as confirmed in your letters of October 23, 1981 and November 11, 1981."

Upon termination at the end of February, 1982, Spang vacated the Lorain Works premises, and sent to USS an invoice for $4,176,358.00 allegedly owed Spang, based on 1,882,090 tons of processed but unsold slag allegedly remaining in USS's possession at $2.219 per ton, the current unit price for non-specification slag.

USS did not pay Spang the invoiced claim for processed slag in inventory and, in fact, declined to make any payments for any of the processed slag in inventory. On September 2, 1982, Spang filed a complaint in assumpsit for $4,176,358.00 plus interest in the Court of Common Pleas of Butler County. A non-jury trial before the Honorable George P. Kiester began in June 1984.

The principle issue at trial was whether Spang had suffered any damages, and if so, how much damage. Spang introduced business records of its operating figures for the contractual period in question. These figures showed the amount of processed non-metallic slag that Spang had delivered to USS during the course of the contract (7,731,468 tons). From that figure, Spang subtracted the processed non-metallic slag that USS had sold to third parties during the course of the contract (5,849,378 tons) to arrive at the tonnage of 1,882,090 which Spang claimed remained in inventory at the Lorain Works. This processed slag included the 480,000 tons identified as remaining in the East Fill site, plus the slag placed in the buffer strip and on roads and for other uses throughout the site.

USS did not offer its own affirmative evidence as to processed slag in inventory, but it challenged Spang's calculation of 1,882,090 tons as inaccurate, based on testimony that previously processed slag could be, and in fact was, rescreened to make a certain sized slag product, and this *reprocessed* slag, although it would be counted again in

Spang's operating figures, would not be available twice in inventory (i.e., it would only be available for sale one time, no matter how many times it was reprocessed). USS also challenged the figure of $2.219 per unit (ton) of processed slag as inaccurate, because Spang would save certain unspecified costs of loading and weighing which normally accompanied sale of processed slag to USS's customers.

After hearing and weighing the evidence, and making fifty-three findings of fact setting forth most of the above, the trial court entered, inter alia, the following conclusions of law:

1. Spang had the burden of proving its cause of action and the damages sustained by a preponderance of the evidence.

\* \* \* \* \* \*

5. Spang has proved by competent evidence that USS is obligated to pay Spang for all slag processed from 1961 to 1982 by Spang at the Lorain Plant, stockpiled on the property of USS and ready for delivery to customers of USS.

6. *Spang established that it had delivered and that on February 28, 1982 there was a substantial amount of processed slag in the possession of USS available for sale to customers of USS.*

7. Where part or all of the slag in the stockpile has been processed more than one time and the only evidence of the amount of slag is the total tonnage processed and reprocessed, *Spang has failed to meet its burden of proving the amount of slag for which payment is due and owing.*

\* \* \* \* \* \*

11. *Spang failed to prove with any reasonable degree of certainty the amount of slag which it processed and which is in the possession of USS* ready to deliver to the customers of USS.

12. As USS sold slag, Spang was obligated to load and weigh the slag. The cost of this service is deductible from the $2.219 per ton that USS agreed to pay Spang.

The burden of proving this item of expense in computing damages rested on Spang. There is lacking, evidence upon which the Court can make this determination.

\* \* \* \* \* \*

14. *Spang has proven its cause of action but has failed to prove damages by competent evidence.*

15. Proof of damages by Spang is so vague and indefinite that a verdict based thereon would be a mere guess.

16. *Although the damages to which Spang is entitled may be substantial* the Court cannot base its verdict on a guess.

Based on the foregoing conclusions of law, the court rendered the following verdict: "And now, December 5, 1984, after trial without jury the court finds in favor of United States Steel Corporation, Defendant and against Spang & Company, Plaintiff." Both parties filed motions for post-trial relief. Spang's motion for post-trial relief requested alternative relief on the issue of damages only, arguing that the verdict "leaves Spang uncompensated for its proven injury and permits defendant.... to retain the substantial benefits of its established wrongdoing," and that this result was contrary to legal standards, was inequitable and was against the weight of the evidence. The alternative relief requested was: to enter judgment against USS in an amount determined by the court on evidence which Spang claimed was on the record and provided a reasonably certain measure of damages; to compel USS to render an accounting of processed slag in inventory; or to order a new trial with respect to damages only and/or allow Spang an opportunity to supplement the record.

USS's motion for post-trial relief submitted that the court's finding of liability on its part was erroneous as it was against the weight of the evidence, that it was based on inadmissible evidence (Spang's operating figures as business records) and because Spang's claim was barred by the applicable statute of limitations.

On April 16, 1985, following briefing and oral argument, Judge Kiester denied USS's motion for post-trial relief, but

granted Spang's motion for relief "limited to a re-trial on the issue of damages as explained in the accompanying opinion." That accompanying opinion stated, inter alia:

> In re-consideration of the record and position of Spang the Court conceivably might find that U.S.S. admitted by its letter of December 13, 1981 that there was a stockpile of 480,000 tons of slag left by Spang on the Lorain property.

Slip op. at 1–2. As to additional processed slag stockpiled at the Lorain Works, the court held:

> In the opinion of the Court justice can best be served if the trial continues on the sole issue of damages. Each party would present evidence as to the specification and non-specification slag processed by Spang and stockpiled on the Lorain property ready for sale and delivery by U.S.S.

> * * * * * *

> There is one case that controls our decision. In that case liability was established but the evidence on damages was "unsatisfactory." The Supreme Court decided that the award was "purely a guess" and stated:

> > "We think, however, that justice requires a new trial, which shall be confined to the damages due to the demolition of the structure, i.e. the cost of restoration of the structure to its condition immediately before the demolition began...." *Romesberg v. Caplan I. & S. Co.*, 385 Pa. 36, 39 [122 A.2d 53] (1956).

> This Court is persuaded that if the findings of the Court on liability in this case would be affirmed on appeal the case would be remanded for a new trial on the issue of damages. It is in the interest of justice and the administration of justice that the record now be re-opened and that the parties develop and present evidence that is available as to the amount of slag that Spang processed and left on the property, ready for sale and delivery to customers of U.S.S. The cost of loading and weighing that slag would also be established.

USS filed a notice of appeal from the trial court's April 16, 1985 order, and the Superior Court reversed. 358 Pa. Super. 543, 518 A.2d 273 (1986) (per Popovich, J., joined by Brosky and Olszewski, JJ.) That court held that the trial court had no authority to grant a new trial solely for the purpose of allowing plaintiff to prove an element of the case, damages, which it failed to prove the first time. That court stated:

> [We] find the trial court to have erred in this matter. A retrial solely for this purpose is contrary to the basic premises of our adversarial system. The interests of justice are not served by permitting one party to have a second bite at the apple merely because the party failed to devour the apple at the first attempt.
>
> \* \* \* \* \* \*
>
> Even though the new trial was limited to the issue of damages, we find such not to be justified under our modern system of jurisprudence, when the *only* basis for retrial is to prove damages and there has been no explanation for appellee's failure to sustain its initial burden.

*Id.*, 358 Pa.Superior Ct. at 545, 546–47, 549–50, 518 A.2d at 274, 276.

We granted Spang's petition for allowance of appeal, and we now reverse.[1]

**1.** A minor procedural detour need not detain us long. Superior Court initially remanded this matter to the lower court for clarification of its April 16, 1985 order. On July 1, 1985, that court "clarified" its previous order, stating that Spang's motion for post-trial relief "is granted limited to the receiving of additional evidence on the issue of damages as explained in the opinion accompanying the order of April 16, 1985." Spang asserts that the instant appeal should be dismissed because USS did not file a new notice of appeal from the July 1, 1985 order which "superceded" the April 16, 1985 order. We find this hypertechnical argument to be without merit.

Spang also asserts that this appeal should be quashed because there has been no final order or judgment entered, since the trial is "merely" continuing on the issue of damages. This too is without merit. The lower court's verdict of December 5, 1984 was entered on its docket, and all requisites for an appealable order have been met. Pa.R.A.P. Rule 301. Moreover, as the Honorable William F. Cercone correctly held in dismissing Spang's motion to quash which it filed in

24

■ The standard of appellate review of a trial court's grant or denial of a motion for a new trial is, as is well-established, quite circumscribed. The power to grant a new trial is inherent in the court, and the decision to grant or deny a motion for new trial lies within the court's discretionary authority. *Colosimo v. Pennsylvania Electric Co.*, 513 Pa. 155, 518 A.2d 1206 (1986). We will not reverse a trial court's grant of a new trial unless there was a clear abuse of that discretion or an error of law which controlled the outcome of the case. *Nehrebecki v. Mull*, 412 Pa. 438, 194 A.2d 890 (1963). In *Smith v. Shaffer*, 511 Pa. 421, 424–425, 515 A.2d 527, 528 (1986), this Court stated:

An appellate court "will not reverse a court's exercise of discretion in granting or refusing to grant a new trial ... unless there has been a clear abuse of that discretion." *Quinn v. Kumar*, 437 Pa. 268, 275, 263 A.2d 458, 462 (1970).

"To determine whether a trial court's decision to grant a new trial constituted a palpable abuse of discretion, an appellate court must examine the record and assess the weight of the evidence; not, however as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so doing plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury."

*Thompson v. City of Philadelphia*, 507 Pa. 592, 600, 493 A.2d 669, 673 (1985).

In *Thompson v. City of Philadelphia, supra,* this Court "emphasized that it is not only a trial court's inherent fundamental and salutary power, but its duty to grant a new trial when it believes the verdict was against the weight of the evidence and resulted in a miscarriage of justice." 507 Pa. at 598, 493 A.2d at 672. It should be obvious that where, as here, the trial court sat as the finder of fact in a non-jury proceeding, its authority to grant a

Superior Court, an appeal may be taken as of right from any order in a civil trial awarding a new trial. Pa. R.A.P. Rule 311(a)(5).

new trial to correct an error of law or an injustice is enhanced, and the appellate court's authority to override the trial court's decision is proportionately diminished. *See also Stevenson v. General Motors Corp.*, 513 Pa. 411, 425, 521 A.2d 413 (1987) (quoting *Lenik Condemnation Case*, 404 Pa. 257, 259, 172 A.2d 316 (1961) for proposition that: "One of the least assailable reasons for granting a new trial is the lower court's conviction that the verdict was against the weight of the evidence and that new process was dictated by the interest of justice.").

There is also no doubt that the trial court has the inherent authority to order a new trial limited solely to a single issue such as damages. *See* Pa.R.Civ.P.Rule 227.1(a)(1), (4) and (5) ("the court may (1) order a new trial as to all *or any of the issues*; or ... (4) affirm, modify or change the decision ...; or (5) enter any other appropriate order.") *and* Pa.R.Civ.P.Rule 213(b) ("The court ... may ... order a separate trial of any ... separate issue ... or issues."). *See also Thompson v. City of Philadelphia, supra* (upholding trial court order which granted new trial over jury verdict limited to issue of comparative negligence, i.e., apportionment of liability among tortfeasors) *and Stevenson v. General Motors Corp., supra* (upholding trial court order granting new trial on both liability and damages based solely on certain incredible testimony offered solely at damages phase of bifurcated trial).

In light of these standards, we will now review the order of the trial court granting Spang's motion for post-trial relief, and ordering a new trial limited to the issue of damages with opportunity for both parties to introduce additional evidence.

 As both courts below recognized, the plaintiff in an action for breach of contract has the burden of proving damages resulting from the breach. *See, e.g., Massachusetts Bonding & Ins. Co. v. Johnston & Harden, Inc.*, 343 Pa. 270, 278–80, 22 A.2d 709, 714 (1941) *and East Texas Motor Freight, Diamond Division v. Lloyd*, 335 Pa.Super. 464, 473, 484 A.2d 797, 801 (1984). As a general rule,

damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty. Restatement (Second) of Contracts, § 352; Murray on Contracts, § 226.

However, as this Court stated in *Pugh v. Holmes*, 486 Pa. 272, 297, 405 A.2d 897 (1979):

[T]here should be no doubt that recovery will not be precluded simply because there is some uncertainty as to the precise amount of damages incurred. It is well established that mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the certain result of the defendant's conduct. ... The basis for this rule is that the breaching party should not be allowed to shift the loss to the injured party when damages, even if uncertain in amount, were certainly the responsibility of the party in breach. ... (citations omitted).

Former Justice Pomeroy reviewed our jurisprudence on this subject in *Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 383 A.2d 808 (1978), stating that indefiniteness does not by itself preclude relief:

In *Massachusetts Bonding & Ins. Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 278–80, 22 A.2d 709, 714 (1941), this Court stated:

"... In *Osterling v. Frick et al., Executors*, 284 Pa. 397, 131 A. 250, this court held [second syllabus]: 'While damages cannot be based on a mere guess or speculation, yet where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy'.

\* \* \* \* \* \*

"Williston on Contracts, Revised Edition, Vol. 5, lays down these principles in respect to measuring damages: Section 1345, p. 3776. ... 'though there must be evidence of substantial damage in order to justify recovery of more than a nominal sum, *the exact amount*

*need not be shown. Where substantial damage has been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether.'*

\* \* \* \* \* \*

The essence of the legal principles above cited is that *compensation for breach of contract cannot be justly refused because proof of the exact amount of loss is not produced,* for there is judicial recognition of the difficulty or even impossibility of the production of such proof. What the law does require in cases of this character is that the evidence shall with a fair degree of probability establish a basis for the assessment of damages."

477 Pa. at 41–42, 383 A.2d at 812 (Opinion in support of affirmance and modification; further citations omitted). *See also* comment (a) to Restatement (Second) of Contracts, § 352 ("Doubts are generally resolved against the party in breach. A party who has, by his breach, forced the injured party to seek compensation in damages should not be allowed to profit from his breach where it is established that a significant loss has occurred.") *and Delahanty v. First Pennsylvania Bank,* 318 Pa.Super. 90, 464 A.2d 1243 (1983) ("justice and public policy require that the wrongdoer bear the risk of uncertainty which his own wrong has created and which prevents the precise computation of damages").

Our cases also support the authority of a trial court to order a new trial to make a more accurate determination of damages and to take additional evidence where it is clear that the plaintiff has sustained substantial damages but the evidence is inadequate to measure damages with reasonable certainty. In *Romesberg v. Caplan Iron and Steel Co.,* 385 Pa. 36, 38, 122 A.2d 53 (1956), the defendant below in a non-jury trespass action challenged the court's verdict of $15,850.00 for destruction of machinery. This Court stated:

We agree with the court below that the testimony is "unsatisfactory" on both sides, and thus the award is purely a guess. Where two sets of testimony on the

measure of damages were described by the court as unsatisfactory, we hesitate to fix the damages, although the plaintiffs claimed substantial damages and we cannot say that the award of $15,850.00 by the court below is excessive. We think, however, that justice requires a new trial, which shall be confined to the damages due to the demolition of the structure, i.e. the cost of restoration of the structure to its condition immediately before the demolition began. ...

We therefore reverse the judgment with a procedendo, confined to the question of damages.

In *Aiken Industries, Inc. v. Estate of Wilson, supra,* Justice Pomeroy observed that the trial court's damage award was a fairly reasonable estimate, but suggested a manner in which it could have been more accurate. Three justices would have "vacate[d] the decree of the court below insofar as it fixes the amount of damages ... and re-mand[ed] the case to the court of common pleas so that the amount of damages due ... may be recalculated. ... We would also [have] permit[ted] the trial court to take such additional evidence as may [have been] deemed necessary or desirable for this purpose." 477 Pa. at 46, 383 A.2d at 814. *See also Darby v. Ventresca,* 337 Pa. 220, 10 A.2d 389 (1940) (Court found no abuse of discretion and affirmed trial court's grant of a new trial which was ordered for the sole reason that the finding for the defendant "was not justified by the evidence and that the facts should be further developed. We feel that the interests of justice require a new trial.") *and Dempsey v. First National Bank of Scranton,* 353 Pa. 473, 46 A.2d 160 (1946) (affirming trial court's order *sua sponte* granting a new trial "in the hope that in the next trial, the case will be fully developed in order that we may know the full truth and arrive at a just conclusion.").

■ In the instant case, the trial court recognized that it erred initially in denying Spang any compensation at all because of perceived deficiencies in the accuracy of Spang's proof of damages, where liability had clearly been demon-

strated and where substantial, though somewhat uncertain, damages had been clearly established by the plaintiff. The court's findings and conclusions of law recognized that USS was obligated to pay Spang for all processed slag delivered to USS (at the agreed upon unit price less costs saved to Spang) and that, upon termination, "there was a substantial amount of processed slag in the possession of USS available for sale to customers of USS." The court further recognized that evidence existed from which it could have concluded that 480,000 tons of processed slag was present in the East Fill alone. Rather than calculate a quantity of processed slag remaining in USS's possession based upon the existing record, the court decided instead that "justice can best be served if the trial continues on the sole issue of damages" so that "the parties [can] develop and present evidence that is available as to the amount of slag that Spang processed and left on the property, ready for sale and delivery to customers of U.S.S. The cost of loading and weighing that slag would also be established."

We find no abuse of discretion or error of law in the court's grant of a new trial limited to damages. Spang met its burden of establishing a contract to be paid for the processed unsold slag at USS's Lorain Works, and offered evidence that, within a fair degree of estimation, established a basis for the assessment of damages. While Spang's evidence of 1,882,090 tons of such slag was rendered imprecise by USS's evidence that some of that figure represented reprocessed slag not properly allocated to "products in inventory," that uncertainty should not have precluded *any recovery* for the damages which were caused by USS and were proven to be substantial.

As Dean Murray has stated, the law recognizes the distinction between the case where uncertainty exists as to whether any substantial damages resulted from a breach of contract, and the case where the uncertainty exists only as to the extent of such damage, and "that if the fact of damage is established, then the right to recover substantial damages exists, even though there may be uncertainty as to

the amount." Murray on Contracts, § 226. The breaching party, USS, which refused to make any payments for processed slag in inventory, should not be allowed to hang the loss on the injured party, Spang, which clearly demonstrated substantial damages for which USS was responsible, even though those damages were not computed with mathematical precision. *Pugh v. Holmes, supra; Aiken Industries, Inc. v. Estate of Wilson, supra.* The lower court's grant of a new trial prevented that inequity, and gave both parties the opportunity to present additional evidence to permit a more accurate calculation of the exact amount of processed slag in inventory on February 28, 1982. Far from an abuse of discretion, this was a just and eminently reasonable exercise of the trial court's discretion and its authority to correct errors at trial.

Appellee argues, and Superior Court agreed, that a remand for a new trial and the taking of additional evidence on damages was impermissible under *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974), wherein we discarded the notion that "basic and fundamental error" would permit an appellate court to address an issue that was not properly preserved below. Superior Court found the *Dilliplaine* rationale (i.e., to encourage complete and thorough trial preparation, to provide the lower court with an opportunity to decide objections, exceptions, etc. in the first instance, to provide for more meaningful appellate review, etc.) analogous to the instant case, based on its reasoning that Spang had utterly failed to meet its burden of proving damages and should not be given a "second bite at the apple merely because the party failed to devour the apple at the first attempt." The analogy fails, however, because Spang demonstrated on its first attempt the existence of substantial damages and offered extensive evidence providing the court with information from which it could have made a fairly reasonable approximation of the amount of processed slag for which USS was obligated to pay Spang.

For the foregoing reasons, we hold that the Superior Court erred in reversing the trial court's order granting a new trial limited to damages, and we reverse the order of the Superior Court, reinstate the order of the Court of Common Pleas of Butler County dated April 16, 1985, and remand to that court for further proceedings.

PAPADAKOS, J., filed a dissenting opinion in which NIX, C.J., and FLAHERTY, J., joined.

PAPADAKOS, Justice, dissenting.

I dissent. I would affirm on the basis of the opinion of Popovich, J., joined by Brosky and Olszewski, JJ., of the Superior Court, filed at 358 Pa.Superior Ct. 543, 518 A.2d 273 (1986).

NIX, C.J., and FLAHERTY, J., join this dissenting opinion.