**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 12-2130

PURE EARTH, INC.

v.

GREGORY W. CALL

v.

PURE EARTH, INC.; MARK ALSENTZER; BRENT KOPENHAVER

Gregory W. Call,
                                            Appellant

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-09-cv-04174)
District Judge:  Honorable Legrome D. Davis

Argued on May 16, 2013

Before:  SLOVITER, FUENTES and ROTH, Circuit Judges

(Opinion filed: July 19, 2013)

Natalie D'Amora, Esquire
John P. Kahn, Esquire
David H. Marion, Esquire
Stella M. Tsai, Esquire (**Argued)**
Archer & Greiner
1650 Market Street
One Liberty Place, 32nd Floor
Philadelphia, PA 19103-7393

Counsel for Appellant

Andrew A. Chirls, Esquire (**Argued)**
Haines & Associates
1835 Market Street, Suite 2420
Philadelphia, PA 19103

Counsel for Appellee

—————

O P I N I O N

—————

**ROTH**, Circuit Judge:

This appeal arises out of Gregory W. Call's claims of securities fraud, breach of contract, and breach of warranty by Pure Earth, Inc., its CEO Mark Alsentzer, and its CFO Brent Kopenhaver (collectively, the PEI Defendants). The only question on appeal is the narrow issue of the District Court's exclusion of the testimony of Call's expert, Stephen Scherf. For the reasons that follow, we conclude that the District Court improperly excluded Scherf's testimony. We therefore will remand the case to the District Court for further proceedings.

I.    **Background**[1]

Pure Earth, Inc., (Pure Earth) is a publicly traded waste-management company; its stock, however, is not widely traded. Pursuant to a Stock Purchase Agreement executed in March 2007, Call agreed to sell three companies under his control to Pure Earth in

---

[1] We write primarily for the parties, who are familiar with the facts of this case. Therefore, we will set forth only those facts necessary to our analysis.

2

exchange for Pure Earth stock. Call agreed to the exchange based on, among other things, a representation made by Alsentzer and Kopenhaver that at that time there were no government investigations pending against Pure Earth or its subsidiaries. This representation was false because the New York City Business Integrity Commission (BIC) had been investigating one of Pure Earth's largest subsidiaries for alleged connections to organized crime. In November 2007, the BIC denied the subsidiary's renewal of its registration, effectively revoking its license to operate in the waste-management industry. As a result, Pure Earth's stock price began to fall dramatically. The stock is now almost worthless.

In September 2009, the PEI Defendants filed suit against Call, alleging that he had breached the Stock Purchase Agreement. Call filed counterclaims, asserting securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 and breach of contract and breach of warranty claims under Pennsylvania law.

Call retained Stephen Scherf as an expert.[2] Scherf produced a report summarizing the terms of the Stock Purchase Agreement and its subsequent amendments. The report highlighted the misrepresentations concerning the BIC investigation and discussed the historical stock price of Pure Earth. In his report, Scherf concluded that "[a]fter the market learned that Pure Earth has [sic] lost its license to haul waste in New York, the stock price gradually decreased to the current trading price of just $0.17."

---

[2] Scherf is a CPA and has a Master of Science in Finance. Among his qualifications, he lectures on business valuation and economic damages and has testified frequently as an expert witness.

The District Court found that Scherf's report was unreliable under Federal Rule of Evidence 702 because it did not establish the elements of loss causation and damages.[3] The court therefore excluded the report. As to loss causation, the District Court held that the report's fundamental shortcoming was its failure to establish how much Pure Earth's stock was overvalued in March 2007 as a result of the misrepresentation made by Alsentzer and Kopenhaver. The District Court held that, for the expert testimony on loss causation to be admissible, Scherf needed to show that the decline in Pure Earth's stock value was a "consequence of dissemination to the market of information regarding the true valuation that caused the subsequent deflation of the stock price." The court found that Scherf's report failed in this respect because he did not establish how the decline was attributable to the misrepresentation. The court also held that Scherf's loss causation analysis did not use the standards or controls that were generally accepted in the scientific community because he did not "develop a model of the normal returns in the subject stock price based on references to independent data that captures market and other developments that are independent of the events being tested."

In addition, the District Court held that Scherf's report was inadmissible to calculate the damages sustained by Call. The District Court held that, due to his failure to isolate the causal factors leading to the stock's then-trading value of $0.17, Scherf had set forth no evidence showing that his damages assessment was accurate.

---

[3] The District Court made no ruling on Scherf's general qualifications to speak as an expert on *non-typical* loss causation or damages.

During a two-day bench trial, the District Court excluded additional testimony proffered by Call on the subject of loss causation and damages on relevance grounds. Ultimately, the District Court held that the PEI Defendants could not prevail on any of their claims against Call. As to Call's counterclaim, the court found that the PEI Defendants engaged in fraudulent conduct in connection with the sale to Call of the PEI stock but that Call could not succeed on his claims against the PEI Defendants because he could not establish damages on his securities fraud and common law claims, nor could he establish loss causation on his securities fraud claim. Therefore, neither side was entitled to financial recovery.

Call appealed.

## II.    Discussion[4]

Call contends that the District Court improperly excluded the Scherf report under Federal Rule of Evidence Rule 702 by applying the wrong legal standard in its loss causation and damages analysis. We agree. As a result, we will reverse the District Court's decision excluding Scherf's testimony.

We ordinarily review a district court's decision to exclude evidence under Federal Rule of Evidence 702 for an abuse of discretion. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). However, our review of whether a district court has properly followed Rule 702 as prescribed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), is plenary. *Id.*

---

[4] The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

## A.    Rule 702

Rule 702 provides that a witness may be qualified to testify as to his expert opinion if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]"  Fed. R. Evid. 702. Rule 702 and *Daubert* require a district court to ensure that "expert testimony is not only relevant, but reliable."  *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 291 (3d Cir. 2012).  "As we have made clear, 'the reliability analysis [required by *Daubert*] applies to all aspects of an expert's testimony:  the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion.'"  *Id.* at 291 (quoting *Heller*, 167 F.3d at 155) (alterations in original).  The standard for determining reliability "is not that high."  *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).  Thus, plaintiffs offering expert testimony do not "have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."  *Id.* at 744.

## B.    Securities Fraud

Securities fraud is banned by § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5.  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007).  A private right of action for securities fraud has six elements:  (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance—also known as transaction causation; (5) economic loss—i.e.

6

damages; and (6) loss causation—a causal connection between the material misrepresentation and the loss. *Id.* (citation omitted).

The loss causation inquiry asks "whether the misrepresentation or omission proximately caused the economic loss." *McCabe*, 494 F.3d at 426 (citing *Semerenko v. Cendant Corp.*, 223 F.3d 165, 185, 187 (3d Cir. 2000); *see also EP MedSystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 884 (3d Cir. 2000) (noting that loss causation requires a "practical approach, in effect applying general causation principles"). In the Third Circuit, the loss causation analysis differs between *typical* and *non-typical* § 10(b) claims. *McCabe*, 494 F.3d at 425. A *typical* § 10(b) claim involves a situation in which a plaintiff claims that the defendant made material public misrepresentations or omissions in order to affect the price of a publicly traded stock. *Id.* at 425 n.2. This is the well-known "fraud on the market" scenario alleged in the vast majority of securities fraud cases. *See, e.g.*, *Semerenko*, 233 F.3d at 169 (misstating earnings reports in a public statement). On the other hand, a *non-typical* case involves a misrepresentation or omission that directly induces another party to enter into a private transaction. *See, e.g.*, *McCabe*, 494 F.3d at 420-21 (individualized misrepresentation inducing investors to purchase stock).

We distinguish between *typical* and *non-typical* § 10(b) cases because public announcements are made to the market at large in a *typical* § 10(b) claim, but in a *non-typical* § 10(b) claim, private misrepresentations are made to induce a particular individual to buy or sell securities. Thus, *typical* versus *non-typical* cases relate to the nature of a plaintiff's reliance in different ways. In a *typical* § 10(b) case, the plaintiff's

7

reliance is on a misstatement that is made to artificially inflate the pricing of a security in the public markets. *McCabe*, 494 F.3d at 425. Therefore, to prove loss causation in a *typical* § 10(b) case, the plaintiff must show that his losses are related specifically to the market's discovery of the misrepresentation and the corresponding decrease in price due to that misrepresentation. *Id.* However, in a *non-typical* case, the plaintiff's reliance interest is different because he acts due to a personalized misrepresentation. *See id.* at 426. Because the personalized misrepresentations which are made in a *non-typical* case do not implicate larger market forces, this Court has recognized that "the factual predicates of loss causation fall into less of a rigid pattern" in *non-typical* cases. *Id.*

### C. Application

As the District Court correctly noted, this is a *non-typical* § 10(b) case because it involves a specific misrepresentation made to Call to induce him to enter into a securities transaction. However, the District Court erred because it used a *typical* § 10(b) analysis when it excluded the Scherf report as unreliable. The District Court held that the Scherf report would have been admitted if it could reliably show that Pure Earth's stock was "overvalued" and "that the subsequent declines [were] the consequence of dissemination to the market of information regarding the true valuation that caused the subsequent deflation of the stock price." By framing the issue in this manner, the District Court imposed a burden of proof for loss causation seen in *typical* securities fraud cases – it required evidence "of other larger market dynamics to show a causal connection between the misrepresentations and the decline in the stock prices."

But this is a *non-typical* case, so proving loss causation is less complex. Scherf's report needed only to offer a reliable conclusion that the misrepresentation regarding the BIC investigation "negatively affected the value" of the Pure Earth stock. *McCabe*, 494 F.3d at 432 (citation omitted). His loss causation analysis did not need to employ the detailed market studies seen in *typical* securities fraud cases.

Looking at this case through a *non-typical* lens, Scherf's report would assist the trier of fact to understand loss causation. Although there may have been several causes that contributed to the decline in the value of Pure Earth's stock, Scherf needed to show only that the misrepresentation regarding the existence of the BIC investigation was a proximate cause—not the sole cause—of the loss. *McCabe*, 494 F.3d at 438; *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 352 (6th Cir. 2012) (noting that multiple proximate causes of an injury are possible under the common law of torts). Scherf's report would appear to make such a showing, and Scherf has the qualifications to make such a report. Therefore, Scherf's report should have been admitted as expert evidence on loss causation.

The District Court also erroneously inserted *typical* § 10(b) requirements in its damages analysis. Damages in a § 10(b) case are usually measured using the "out-of-pocket rule," which calculates damages as "the difference between the price paid for a security and the security's 'true value'" at the time of purchase. *Sowell v. Botcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991). Similarly, damages in a breach of contract case are to be measured as of the date of the breach. *Scully v. US Wats, Inc.*, 238 F.3d 497, 510 (3d Cir. 2001) (applying Pennsylvania law).

9

Here, the District Court held that Scherf needed to isolate the causal factors that contributed to Call's loss in order to determine the true value of the Pure Earth stock. In other words, the District Court wanted Scherf to perform a study ruling out other market factors that contributed to the decline in value of Pure Earth's stock. This was improper for two reasons. First, the District Court conflated the loss causation analysis (which focuses on evidence of a connection between the misstatement and decline in stock value) with a damages analysis (which focuses on the stock's true value on the day it was purchased). Second—and more importantly—the District Court applied standards appropriate only in a *typical* § 10(b) case by holding that a fraud on the market-style model was relevant to the damages analysis in a *non-typical* § 10(b) case.

The District Court overcomplicated the damages analysis. To establish damages, Call needed to prove what the value of the PEI stock in March 2007 would have been if the facts of the BIC investigation were known at that time. Call had the burden of proving damages and those damages could not be "too speculative, vague or contingent and are not recoverable for loss beyond an amount that evidence permits to be established with reasonable certainty." *Spang & Co. v. U.S. Steel Corp.*, 545 A.2d 861, 877 (Pa. 1988) (quoting Restatement (Second) of Contracts § 352; Murray on Contracts, § 226). Again, the Scherf Report could have assisted the trier of fact to understand the factors involved in valuation of the stock in order to determine the amount of damages. It should therefore have been admitted as expert evidence on damages.

**III.     Conclusion**

For the foregoing reasons, we will reverse the judgment of the District Court and remand this case for a new trial and further proceedings consistent with this opinion.

Pure Earth Inc. v. Gregory W. Call, No. 12-2130
SLOVITER, Circuit Judge, dissenting.


Because I believe that it was not an abuse of discretion for the District Court to conclude that the portions of Scherf's report related to causation and damages were unreliable, I respectfully dissent.

The majority applies plenary review to the District Court's decision to exclude portions of Scherf's report. That standard is only appropriate when reviewing a district court's interpretation of Federal Rule of Evidence 702. *See Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). The majority, however, does not take issue with the District Court's interpretation of Rule 702, but with its interpretation of securities law.

Securities law is irrelevant here. The appropriate measure for the reliability of expert testimony does not depend on what the testimony is being introduced to prove, but on whether the expert reaches his/her conclusions by applying "reliable principles and methods" to the facts in the case. FED. R. EVID. 702. Scientific methods that would be unreliable in a typical securities fraud case do not become reliable because they are being used in a non-typical case. Thus, the opinion's lengthy discussion of securities law is immaterial, and its use of plenary review is erroneous.

We must instead review the District Court's decision to exclude Scherf's expert testimony for abuse of discretion. Scherf's conclusions were based on the correlation . . . between the misrepresentations [made to Call]" and the

subsequent decline in the price of Pure Earth's stock. App. at 166. Correlation is not causation. As Scherf himself noted, "[i]n order to ensure that the fluctuations in stock price experienced by Pure Earth were not the result of outside factors" the report needed to control for other variables. App. at 168. The report, however, only compared the trajectory of Pure Earth's stock price to the Dow Jones Industrial Average and to waste-management companies with dramatically different business models. The District Court did not abuse its discretion by concluding that such inapt comparisons undermined the reliability of Scherf's testimony and therefore justified excluding it under Rule 702.[1]

For these reasons, I would affirm the District Court.

---

[1] As the majority notes, Call was not required to provide a market study in this, a non-typical securities fraud case. He was, however, required both to prove that the misrepresentation was a proximate cause of the loss and to establish damages as a result of this misrepresentation. Call could have introduced a different expert report to achieve these ends. For example, an expert familiar with waste-hauling companies might have been able to reliably assess Pure Earth's value both with and without a New York City hauling license. Such an assessment would not have depended on Pure Earth's stock price and so would not have had to account for other causes of the stock's decline. Scherf's report, however, drew conclusions based on Pure Earth's stock price. It was appropriate for the District Court to conclude that in order for such a study to be reliable, it had to account for other market factors that could have contributed to the stock's decline.