OPINION
ROTH, Circuit Judge:
This appeal arises out of Gregory W. Call’s claims of securities fraud, breach of contract, and breach of warranty by Pure Earth, Inc., its CEO Mark Alsentzer, and its CFO Brent Kopenhaver (collectively, the PEI Defendants). The only question on appeal is the narrow issue of the District Court’s exclusion of the testimony of Call’s expert, Stephen Scherf. For the reasons that follow, we conclude that the District Court improperly excluded Scherf s testimony. We therefore will remand the case to the District Court for further proceedings.
I. Background[1]
Pure Earth, Inc., (Pure Earth) is a publicly traded waste-management company; its stock, however, is not widely traded. Pursuant to a Stock Purchase Agreement executed in March 2007, Call agreed to sell *258 three companies under his control to Pure Earth in exchange for Pure Earth stock. Call agreed to the exchange based on, among other things, a representation made by Alsentzer and Kopenhaver that at that time there were no government investigations pending against Pure Earth or its subsidiaries. This representation was false because the New York City Business Integrity Commission (BIC) had been investigating one of Pure Earth’s largest subsidiaries for alleged connections to organized crime. In November 2007, the BIC denied the subsidiary’s renewal of its registration, effectively revoking its license to operate in the waste-management industry. As a result, Pure Earth’s stock price began to fall dramatically. The stock is now almost worthless.
In September 2009, the PEI Defendants filed suit against Call, alleging that he had breached the Stock Purchase Agreement. Call filed counterclaims, asserting securities fraud in violation of § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 and breach of contract and breach of warranty claims under Pennsylvania law.
Call retained Stephen Scherf as an expert.[2] Scherf produced a report summarizing the terms of the Stock Purchase Agreement and its subsequent amendments. The report highlighted the misrepresentations concerning the BIC investigation and discussed the historical stock price of Pure Earth. In his report, Scherf concluded that “[a]fter the market learned that Pure Earth has [sic] lost its license to haul waste in New York, the stock price gradually decreased to the current trading price of just $0.17.”
The District Court found that Scherfs report was unreliable under Federal Rule of Evidence 702 because it did not establish the elements of loss causation and damages.[3] The court therefore excluded the report. As to loss causation, the District Court held that the report’s fundamental shortcoming was its failure to establish how much Pure Earth’s stock was overvalued in March 2007 as a result of the misrepresentation made by Alsentzer and Kopenhaver. The District Court held that, for the expert testimony on loss causation to be admissible, Scherf needed to show that the decline in Pure Earth’s stock value was a “consequence of dissemination to the market of information regarding the true valuation that caused the subsequent deflation of the stock price.” The court found that Scherfs report failed in this respect because he did not establish how the decline was attributable to the misrepresentation. The court also held that Scherfs loss causation analysis did not use the standards or controls that were generally accepted in the scientific community because he did not “develop a model of the normal returns in the subject stock price based on references to independent data that captures market and other developments that are independent of the events being tested.”
In addition, the District Court held that Scherfs report was inadmissible to calculate the damages sustained by Call. The District Court held that, due to his failure to isolate the causal factors leading to the stock’s then-trading value of $0.17, Scherf had set forth no evidence showing that his damages assessment was accurate.
*259 During a two-day bench trial, the District Court excluded additional testimony proffered by Call on the subject of loss causation and damages on relevance grounds. Ultimately, the District Court held that the PEI Defendants could not prevail on any of their claims against Call. As to Call’s counterclaim, the court found that the PEI Defendants engaged in fraudulent conduct in connection with the sale to Call of the PEI stock but that Call could not succeed on his claims against the PEI Defendants because he could not establish damages on his securities fraud and common law claims, nor could he establish loss causation on his securities fraud claim. Therefore, neither side was entitled to financial recovery.
Call appealed.
II. Discussion[4]
Call contends that the District Court improperly excluded the Scherf report under Federal Rule of Evidence Rule 702 by applying the wrong legal standard in its loss causation and damages analysis. We agree. As a result, we will reverse the District Court’s decision excluding Scherf s testimony.
We ordinarily review a district court’s decision to exclude evidence under Federal Rule of Evidence 702 for an abuse of discretion. Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir.1999). However, our review of whether a district court has properly followed Rule 702 as prescribed in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), is plenary. Id.
A. Rule 702
Rule 702 provides that a witness may be qualified to testify as to his expert opinion if his “scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue[.]” Fed.R.Evid. 702. Rule 702 and Daubert require a district court to ensure that “expert testimony is not only relevant, but reliable.” ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 291 (3d Cir.2012). “As we have made clear, ‘the reliability analysis [required by Daubert ] applies to all aspects of an expert’s testimony: the methodology, the facts underlying the expert’s opinion, [and] the link between the facts and the conclusion.’ ” Id. at 291 (quoting Heller, 167 F.3d at 155) (alterations in original). The standard for determining reliability “is not that high.” In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 745 (3d Cir.1994). Thus, plaintiffs offering expert testimony do not “have to prove their case twiee-they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.” Id. at 744.
B. Securities Fraud
Securities fraud is banned by § 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5. McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir.2007). A private right of action for securities fraud has six elements: (1) a material misrepresentation or omission; (2) scien-ter; (3) a connection with the purchase or sale of a security; (4) reliance — also known as transaction causation; (5) economic loss — i.e. damages; and (6) loss causation — a causal connection between the ma *260 terial misrepresentation and the loss. Id. (citation omitted).
The loss causation inquiry asks “whether the misrepresentation or omission proximately caused the economic loss.” McCabe, 494 F.3d at 426 (citing Semerenko v. Cendant Corp., 223 F.3d 165, 185, 187 (3d Cir.2000)); see also EP MedSystems, Inc. v. EchoCath, Inc., 235 F.3d 865, 884 (3d Cir.2000) (noting that loss causation requires a “practical approach, in effect applying general causation principles”). In the Third Circuit, the loss causation analysis differs between typical and non-typical § 10(b) claims. McCabe, 494 F.3d at 425. A typical § 10(b) claim involves a situation in which a plaintiff claims that the defendant made material public misrepresentations or omissions in order to affect the price of a publicly traded stock. Id. at 425 n. 2. This is the well-known “fraud on the market” scenario alleged in the vast majority of securities fraud cases. See, e.g., Semerenko, 223 F.3d at 169 (misstating earnings reports in a public statement). On the other hand, a non-typical case involves a misrepresentation or omission that directly induces another party to enter into a private transaction. See, e.g., McCabe, 494 F.3d at 420-21 (individualized misrepresentation inducing investors to purchase stock).
We distinguish between typical and non-typical § 10(b) cases because public announcements are made to the market at large in a typical § 10(b) claim, but in a non-typical § 10(b) claim, private misrepresentations ai'e made to induce a particular individual to buy or sell securities. Thus, typical versus non-typical cases relate to the nature of a plaintiffs reliance in different ways. In a typical § 10(b) case, the plaintiffs reliance is on a misstatement that is made to artificially inflate the pricing of a security in the public markets. McCabe, 494 F.3d at 425. Therefore, to prove loss causation in a typical § 10(b) case, the plaintiff must show that his losses are related specifically to the market’s discovery of the misrepresentation and the corresponding decrease in price due to that misrepresentation. Id. However, in a non-typical case, the plaintiffs reliance interest is different because he acts due to a personalized misrepresentation. See id. at 426. Because the personalized misrepresentations which are made in a non-typical case do not implicate larger market forces, this Court has recognized that “the factual predicates of loss causation fall into less of a rigid pattern” in non-typical cases. Id.
C. Application
As the District Court correctly noted, this is a non-typical § 10(b) case because it involves a specific misrepresentation made to Call to induce him to enter into a securities transaction. However, the District Court erred because it used a typical § 10(b) analysis when it excluded the Scherf report as unreliable. The District Court held that the Scherf report would have been admitted if it could reliably show that Pure Earth’s stock was “overvalued” and “that the subsequent declines [were] the consequence of dissemination to the market of information regarding the true valuation that caused the subsequent deflation of the stock price.” By framing the issue in this manner, the District Court imposed a burden of proof for loss causation seen in typical securities fraud cases-it required evidence “of other larger market dynamics to show a causal connection between the misrepresentations and the decline in the stock prices.”
But this is a non-typical case, so proving loss causation is less complex. Scherfs report needed only to offer a reliable conclusion that the misrepresentation regarding the BIC investigation “negatively affected the value” of the Pure Earth stock. *261 McCabe, 494 F.3d at 432 (citation omitted). His loss causation analysis did not need to employ the detailed market studies seen in typical securities fraud cases.
Looking at this case through a non-typical lens, Scherfs report would assist the trier of fact to understand loss causation. Although there may have been several causes that contributed to the decline in the value of Pure Earth’s stock, Scherf needed to show only that the misrepresentation regarding the existence of the BIC investigation was a proximate cause — not the sole cause — of the loss. McCabe, 494 F.3d at 438; Chattman v. Toho Tenax Am., Inc., 686 F.3d 339, 352 (6th Cir.2012) (noting that multiple proximate causes of an injury are possible under the common law of torts). Scherfs report would appear to make such a showing, and Scherf has the qualifications to make such a report. Therefore, Scherfs report should have been admitted as expert evidence on loss causation.
The District Court also erroneously inserted typical § 10(b) requirements in its damages analysis. Damages in a § 10(b) ease are usually measured using the “out-of-pocket rule,” which calculates damages as “the difference between the price paid for a security and the security’s ‘true value’ ” at the time of purchase. Sowell v. Butcher & Singer, Inc., 926 F.2d 289, 297 (3d Cir.1991). Similarly, damages in a breach of contract case are to be measured as of the date of the breach. Scully v. U.S. WATS, Inc., 238 F.3d 497, 510 (3d Cir.2001) (applying Pennsylvania law).
Here, the District Court held that Scherf needed to isolate the causal factors that contributed to Call’s loss in order to determine the true value of the Pure Earth stock. In other words, the District Court wanted Scherf to perform a study ruling out other market factors that contributed to the decline in value of Pure Earth’s stock. This was improper for two reasons. First, the District Court conflated the loss causation analysis (which focuses on evidence of a connection between the misstatement and decline in stock value) with a damages analysis (which focuses on the stock’s true value on the day it was purchased). Second — and more importantly — the District Court applied standards appropriate only in a typical § 10(b) case by holding that a fraud on the market-style model was relevant to the damages analysis in a non-typical § 10(b) case.
The District Court overcomplicated the damages analysis. To establish damages, Call needed to prove what the value of the PEI stock in March 2007 would have been if the facts of the BIC investigation were known at that time. Call had the burden of proving damages and those damages could not be “too speculative, vague or contingent and are not recoverable for loss beyond an amount that evidence permits to be established with reasonable certainty.” Spang & Co. v. U.S. Steel Corp., 519 Pa. 14, 545 A.2d 861, 866 (1988) (quoting Restatement (Second) of Contracts § 352; Murray on Contracts, § 226). Again, the Scherf Report could have assisted the trier of fact to understand the factors involved in valuation of the stock in order to determine the amount of damages. It should therefore have been admitted as expert evidence on damages.
III. Conclusion
For the foregoing reasons, we will reverse the judgment of the District Court and remand this case for a new trial and further proceedings consistent with this opinion.

. We write primarily for the parties, who are familiar with the facts of this case. Therefore, we will set forth only those facts necessary to our analysis.

. Scherf is a CPA and has a Master of Science in Finance. Among his qualifications, he lectures on business valuation and economic damages and has testified frequently as an expert witness.

. The District Court made no ruling on Scherfs general qualifications to speak as an expert on non-typical loss causation or damages.

. The District Court had subject matter jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.