# Kundus v. Johnson

*Gary M. Lang,* for plaintiff.
*William David Geiger,* for defendant.

WETTICK, *A.J.,* October 4, 1985—This is a den-tal-malpractice action in which plaintiff has raised the lack of informed consent as a basis for recovery. This action arises out of a July 1981 operation in which defendant removed plaintiff's wisdom teeth. As a result of the operation, plaintiff allegedly suf-fered a severe reduction in sensation and feeling in and about her mouth.

Prior to the operation, plaintiff executed a consent form which included a statement that "nerves will be exposed to surgical alterations which may result in temporary or permanent numbness." At her de-position, plaintiff testified that only defendant's re-ceptionist was present when she executed this con-sent form and that she questioned the receptionist about the meaning of its language and was given in-correct information. At their depositions, defendant and his receptionist both testified that neither spe-cifically recalled the circumstances under which plaintiff executed this form but that it is defendant's practice to be present when the form is signed and to answer any questions regarding its contents.

Through a motion to compel discovery, plaintiff requests this court to compel defendant to answer

interrogatories listing the names and addresses of all defendant's patients who signed consent forms for surgery between July 1980 and July 1981. If this court concludes that this discovery request is overly broad, plaintiff requests this court to require defendant randomly to select the names and addresses of a small number of patients who signed such forms. Defendant objects to any discovery that provides plaintiff's counsel with the names of patients who have no involvement with this litigation.

The limitations of the scope of discovery are set forth in Pa.R.C.P.4011 which reads as follows:

"No discovery or deposition shall be permitted which

(a) is sought in bad faith;

(b) would cause unreasonable annoyance, embarrassment, oppression, burden or expense to the deponent or any person or party;

(c) relates to matter which is privileged; or

(d) [Rescinded]

(e) would require the making of an unreasonable investigation by the deponent or any party or witness;

(f) [Rescinded]." Defendant contends that plaintiff's discovery request is barred by Rule 4011(c) because a patient's constitutional right of privacy prevents disclosure of the name of a patient without the patient's consent and by Rule 4011(b) because such discovery would cause unreasonable annoyance and embarrassment to defendant's patients.

Because the privacy rights of patients will be protected only if these rights are raised by the physician who is being requested to produce information regarding his or her patients, a physician has standing to raise the privacy claims of his or her patients. In Re June 1979 Allegheny County Investigating Grand Jury, 490 Pa. 143, 415 A.2d 73 (1980); Penn-

sylvania Dental Association v. Commonwealth of Pennsylvania, Department of Health, 75 Pa. Commw. 7, 461 A.2d 329 (1983). Thus, we will consider the merits of defendant's contention that plaintiff's discovery request be denied in order to protect the rights and interests of his patients.

In the case of In Re "B," Appeal of Dr. Loren Roth, 482 Pa. 471, 394 A.2d 419 (1978), the opinion of Justice Manderino writing for the court (in which only one other justice joined) held that the constitutional right of privacy barred a court from compelling a psychiatrist to reveal the contents of the psychiatric records of a patient without that patient's consent even though such records were relevant to the issue of whether the juvenile court should return a child to the patient. In Stark Dental Associates v. Medical Service Association of Pennsylvania, 11 D.&C.3d 699 (1978), the principles enunciated in the Manderino opinion in In Re "B", Appeal of Dr. Loren Roth, supra, were extended to support a holding that the constitutional right of privacy prohibits disclosure of dental patients' names. This issue of whether a constitutional right of privacy bars a court from compelling the disclosure of dental patients' names was also discussed by the Commonwealth Court in Pennsylvania Dental Association v. Commonwealth of Pennsylvania, Department of Health, supra, which recognized that the constitutional claim was substantial while deciding the case on other grounds.

The constitutional right of privacy protects only the most private areas of personal life. Such protections exist because disclosures of these areas of personal life are presumed to cause unreasonable embarrassment and annoyance. Rule 4011(b) also protects persons from unreasonable embarrassment and annoyance and its protections are significantly

broader. These protections extend beyond the most private areas of personal life. Also, these protections apply whenever a court concludes that the burdens that discovery places on the witness outweigh the benefits that discovery will provide to the party seeking discovery. Moreover, when discovery that may be embarrassing or burdensome is sought from a stranger to the action, the party seeking discovery must make a greater showing of the need for such discovery. Simon v. Simon, 6 D.&C.3d 196 (1977), and cases cited therein.

The case law recognizing the substantiality of a patient's claim that his or her identity is constitutionally protected rests on the premise that the disclosure of a patient's identity may cause the patient substantial annoyance and embarrassment. Thus, in accordance with the established rule of interpretation that language should be construed, if possible, to avoid a constitutional question, at the very minimum, we construe the provisions of Rule 4011(b) barring discovery that causes unreasonable embarrassment or annoyance to protect the identity of a patient unless the benefits from disclosing the patient's identity are clearly apparent and substantial.[1]

It is unlikely that plaintiff's discovery of the names and addresses of other patients of defendant

---

1. In 1979, the Pennsylvania Supreme Court amended Disciplinary Rule 4-101(B)(1) of the Code of Professional Responsibility by extending the protections against disclosure of the confidences or secrets of a client to include the client's identity. Because the issues concerning the disclosure of a client's identity and a patient's identity are so similar, the policy considerations that led to this 1979 amendment also support this court's decision to construe Rule 4011(b), at the very minimum, to protect the identity of patients in the absence of a compelling need to reveal patients' identities.

would resolve the issue of whether defendant adequately informed plaintiff of possible adverse consequences of the treatment. The purpose of the discovery which plaintiff seeks is to convince the factfinder that defendant was not present when plaintiff signed the consent form. But even if plaintiff secures the names and addresses of other patients, these patients are not likely to discuss voluntarily their treatment with plaintiff's counsel. While these patients may be compelled to discuss their treatment through deposition testimony, resource and time limitations will permit plaintiff to schedule the depositions of only a limited number of these other patients. Moreover, there is no guarantee that these depositions will be particularly helpful in resolving the credibility issue in plaintiff's case. A high percentage of patients will probably be unable to recall whether they had the opportunity to discuss the consent form with defendant, because this would not have been a significant event during the course of their treatment.[2] Furthermore, even if we assume that some former patients testify that they did not have the opportunity to discuss the consent form with defendant, this will not establish what occurred during the course of plaintiff's treatment.

2. An article in the March 8, 1976 Journal of the American Medical Association (Vol. 235, no. 10, page 993) discusses a study (Robinson, G, Merau, A, Informed Consent: Recall by Patients Tested Postoperatively, Ann Thorac Surg 22: 209-212) of patients interviewed within four to six months after open heart surgery which found that each had forgotten major portions of the preoperative interviews and that general recall averaged 29 percent. According to Meisel/Roth, What We Do and Do Not Know About Informed Consent, November 21, 1981, Journal of American Medical Association (Vol. 246, no. 21, pp. 2473-77), the methods and findings of this study are typical and other studies using similar methods have turned up similar results.

Defendant will likely argue that this testimony from former patients is based upon faulty memory or dissatisfaction with the treatment received, or that the manner in which that particular patient was treated was an exception to defendant's general practice. Defendant will likely bolster these contentions by presenting testimony from other patients that they had the opportunity to discuss the consent form with defendant. Thus, the benefits from the disclosure of identities of other patients are not so clearly apparent and substantial as to require disclosure.[3]

Even if plaintiff's request that the court compel defendant to disclose patients' identities did not raise a substantial constitutional claim, we would reach the same result. Because the benefits to plaintiff from the disclosure of the identity of defendant's other patients are so speculative, we are unwilling to expose these patients to the obvious burdens that such discovery will impose. Patients' expectations that all matters surrounding their treatment with physicians will remain private will be shattered;[4]

3. In International Union v. Garner, 102 F.R.D. 108 (M.D., Tenn., 1984), the court used a similar approach in denying a motion to compel a union to produce union authorization cards. The court held that such discovery would not be compelled unless the party seeking discovery demonstrated that this discovery was "substantially related to a legitimate and compelling interest" because this discovery would infringe upon employees' freedom of association interests protected by the First Amendment.

4. Weis, Confidentiality Expectations of Patients, Physicians, and Medical Students, May 21, 1982, Journal of American Medical Association (Vol. 247, no. 19 pp. 2695-97) describes a survey of 177 patients, 53 medical students, and 109 house staff regarding the confidentialtiy of information that patients give to physicians. In response to whether a patient might be identified by name to nonmedical personnel, only 2 percent of the patients, 6 percent of the house staff, and 8

patients will be compelled to discuss their medical affairs with a stranger; the relationship between a patient and his or her physician will be strained because of the patient's discomfort over the physician bringing the patient's affairs into a matter in which the patient has no concern; patients may be compelled to testify against a physician with whom they desire to continue treatment; and an inquiry arising out of a malpractice action against their physician may cause patients to worry about the quality of care that they received and to make them less confident as to the quality of future care.

For the reasons set forth in this opinion, the dispute over whether plaintiff had the opportunity to discuss the consent form with defendant should be resolved through the testimony of the parties and other nonpatient witnesses to plaintiff's treatment. Since we are denying plaintiff's motion to compel discovery on the basis of the privacy interests of de-

---

percent of the medical students believed that it was common practice for patients' medical information to be handled in that way. Weis's major conclusion was that patients have a stricter definition of confidentiality than do their physicians and that "it is hoped that a knowledge of patients' expectations will allow physicians to improve their attitudes and practice in this matter, thereby enhancing the quality of physician-patient relationships and medical care in general" (p. 2697):

". . . confidentiality is a cornerstone of the physician-patient relationship. It is acknowledged by both the medical and legal professions that in order for physicians to administer the most helpful and efficacious treatment, patients must communicate all information having any bearing on their illnesses or injuries . . . . This study documents that patients expect a more rigorous standard of confidentiality than actually exists. If this practice by physicians does not change, and if patients were to become aware of it, they might become increasingly reluctant to divulge sensitive information even if it is pertinent to their medical problem. The caliber of care given to them would be jeopardized." (p. 2696)

fendant's patients, the court order which we enter will fully protect these interests by prohibiting defendant from presenting other patients as witnesses at trial on the issue of whether plaintiff received informed consent. Such an order insures that defendant may not block plaintiff's access to patient records by raising a constitutional claim on behalf of his patients while utilizing these same records to solicit testimony from them that would support his case.[5]

## ORDER OF COURT

On this October 4, 1985, it is hereby ordered that:

(1) Plaintiff's motion to compel discovery is denied and defendant is prohibited from revealing the identities of other patients to any person in connection with this litigation; and

(2) Defendant is prohibited from presenting any testimony form other patients with respect to plaintiff's claim that defendant did not provide informed consent.

---

5. Throughout this opinion, we assume that patients receiving dental care have the same rights to privacy as patients receiving medical care from a physician. We do not discuss this issue because no claim was made that the privacy interests of dental patients should receive less protection than the privacy interests of patients of medical doctors. Also see Stark Dental Associates v. Medical Service Associates of Pennsylvania, supra.