611 A.2d 232

**MILLER ORAL SURGERY, INC.**

v.

**Donald D. DINELLO, D.M.D., C. Richard Miller, D.D.S., Wesley Sabocheck, D.M.D., and Donald D. Dinello, D.M.D., P.C.**

**Appeal of Donald D. DINELLO, D.M.D., Wesley Sabocheck, D.M.D., and Donald D. Dinello, D.M.D., P.C.**

**MILLER ORAL SURGERY, INC. Appellant,**

v.

**Donald D. DINELLO, D.M.D., C. Richard Miller, D.D.S., Wesley Sabocheck, D.M.D., and Donald D. Dinello, D.M.D., P.C., Appellees.**

**MILLER ORAL SURGERY, INC.**

v.

**Donald D. DINELLO, D.M.D., C. Richard Miller, D.D.S., Wesley Sabocheck, D.M.D., and Donald D. Dinello, D.M.D., P.C.**

**Appeal of Donald D. DINELLO, D.M.D., Wesley Sabocheck, D.M.D., and Donald D. Dinello, D.M.D., P.C.**

**MILLER ORAL SURGERY, INC. Appellant,**

v.

**Donald D. DINELLO, D.M.D., C. Richard Miller, D.D.S., Wesley Sabocheck, D.M.D., and Donald D. Dinello, D.M.D., P.C., Appellees.**

Superior Court of Pennsylvania.

Argued Oct. 22, 1991.

Filed June 15, 1992.

Andrew S. Gordon, Pittsburgh, for appellants (at 547 and 114) and appellee (at 572 and 115).

Charles W. Rubendall, II, Harrisburg, for appellant (at 572 and 115) and appellees at (547 and 114).

Before WIEAND, MONTEMURO and KELLY, JJ.

WIEAND, Judge:

In this action for tortious interference with plaintiff's business relationships, the trial court entered judgment against defendants as a sanction for failure to comply with the court's discovery orders and, after trial without jury, awarded damages to plaintiff in the amount of three hundred thousand ($300,000) dollars. Post-trial motions were denied, and the defendants appealed. They contend that the trial court (1) abused its discretion when it entered a default judgment against them and (2) erred in its computation of plaintiff's damages.

Donald D. Dinello, D.M.D., C. Richard Miller, D.D.S., Wesley Sabocheck, D.M.D., and Dinello's professional corporation, occupy and practice dentistry in office space formerly leased to and used by Miller Oral Surgery, Inc. (MOS). Alleging that Dinello, Miller and Sabocheck were

diverting its patients, MOS filed an action to recover damages. It sought, by discovery, to obtain the names and addresses of the patients being treated by the defendants at the former offices of MOS. Defendants moved for a protective order. It was denied by the trial court. The defendants, nevertheless, refused to provide information and documents sought to be recovered by MOS. There followed a series of motions by MOS and orders by the court directing the defendants to provide the same. When defendants remained adamant in their refusal to provide the requested information, the trial court entered a sanction order which caused judgment to be entered in favor of MOS on the issue of liability. Defendants next filed a petition to open the judgment which the court had entered. When this was denied, they appealed. The Superior Court, however, quashed the appeal as interlocutory, leaving the trial court's order unreviewed pending a final judgment for monetary damages. See: *Miller Oral Surgery, Inc. v. Dinello*, 342 Pa.Super. 577, 493 A.2d 741 (1985). Therefore, the case proceeded to trial on the issue of MOS's damages. The trial court awarded damages of three hundred thousand ($300,-000) dollars, which, the court explained, included the following: (1) lost revenue caused by the diversion of patients; (2) the value of lost referrals; (3) damage to the equity value of MOS's practice; and (4) additional advertising and promotional expenses incurred by plaintiff to counteract the diversion of plaintiff's patients.

Pa.R.C.P. 4019(c)(3) expressly authorizes a court to enter a default judgment against a defendant in a civil action who refuses to comply with the court's discovery orders.[1] In *Pride Contracting v. Biehn Construction, Inc.*, 381 Pa.Super. 155, 553 A.2d 82 (1989), *alloc. denied*,

---

1. Pennsylvania Rule of Civil Procedure 4019(c)(3) declares, in full:

   (c) The court, when acting under subdivision (a) of this rule, may make

   . . . .

   (3) an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or entering a judgment of non pros or by default against the disobedient party or party advising the disobedience.

523 Pa. 643, 565 A.2d 1167 (1989), the Superior Court addressed the scope of the trial court's power to enter sanction orders as follows:

The specific sanction to be imposed under this rule is a matter within the discretion of the trial court. *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 385, 492 A.2d 1382, 1387 (1985).... "The court is required to strike a balance between the procedural need to move the case to a prompt disposition and the substantive rights of the parties." *Gonzales v. Procaccio Bros. Trucking Co.*, 268 Pa.Super. 245, 252, 407 A.2d 1338, 1341 (1979). The court must examine the party's failure to comply in light of the prejudice caused to the opposing party. *Brunetti v. Southeastern Pennsylvania Transportation Authority, supra* 329 Pa.Super. [477] at 482, 478 A.2d [889] at 891. Whether the failure to provide information represents a willful disregard of a court order is also a factor to be considered in fashioning the severity of the sanction. *Roman v. Pearlstein*, 329 Pa.Super. 392, 399, 478 A.2d 845, 848 (1984). See also: *Calderaio v. Ross*, 395 Pa. 196, 150 A.2d 110 (1959).

*Id.* 381 Pa.Super. at 159, 553 A.2d at 83–84.

In this case, MOS served interrogatories on defendants in October, 1981, requesting the name, address and telephone number of each patient treated by the defendants, together with the date(s) of treatment or services and the identity of the duly licensed oral surgeon, if any, who had performed the treatment or services at 1711 Front Street, Harrisburg, Pennsylvania, during the period in which the premises were leased to the defendants.[2] A motion for a protective order was filed in which defendants alleged that the requested patient names and addresses were confidential. This motion was denied. When defendants attempted to have the court amend its order to include language certifying the

**2.** The interrogatories were initially served only on Dinello's professional corporation. When separate actions against the professional corporation and the individual defendants were consolidated, however, the discovery proceedings were made applicable to all defendants. Accordingly, *all* defendants were bound by the discovery order.

case for an immediate appeal pursuant to 42 Pa.C.S. § 702(b), their motion was denied. The interrogatories remained unanswered when, on May 6, 1982, MOS filed a petition for entry of default judgment pursuant to Rule 4019(c)(3). In response to this petition, the trial court issued a rule to show cause "why a default judgment should not be entered" for refusal to answer interrogatories. Defendants averred in response that sanctions were inappropriate because an order compelling discovery had not previously been issued and because, in any event, a less drastic sanction would be more appropriate. Following a hearing, the trial court afforded defendants another thirty days within which to respond to the interrogatories, but expressly warned that failure to comply with its order could, on motion, result in the imposition of sanctions. The thirty day period expired without any answers to the interrogatories. Upon motion for sanctions, another hearing was held on December 22, 1982, at which Dr. Dinello testified regarding his reasons for non-compliance with the order of the trial court. From this testimony the court concluded that neither Dr. Dinello nor the other defendants intended to comply with the court's discovery order. Therefore, by order dated January 5, 1983, the court ordered that a default judgment on liability be entered against the three defendants, pursuant to Rule 4019(c)(3), for their failure to comply with the trial court's order of September 8, 1982.

The record supports the trial court's determination that the defendants did not intend to comply with the trial court's discovery order. Under these circumstances, the court could not countenance continued disobedience of its order. Therefore, it imposed a sanction in accordance with the express provisions of the rule. As the Supreme Court observed in *Isenberger v. Schumann*, 415 Pa. 217, 203 A.2d 136 (1964),

> Confronted with the outright refusal of the defendants to answer Interrogatories which this Court directed to be answered, this Court had two alternatives available: Either to allow defendants to defy an Order of Court

without any adverse results, or to apply the provisions of Pennsylvania Rule of Civil Procedure 4019(c) and impose an appropriate sanction. To permit defendants to disregard an Order of Court is unthinkable, as it would totally destroy the effectiveness of the discovery procedure of our Courts. Obviously, then, the Court was forced to take the second alternative.

*Id.*, 415 Pa. at 218, 203 A.2d at 137.

The trial court gave careful consideration to the specific sanction to be imposed. It determined that the identification of patients by the appellants was the only source of information to prove or disprove plaintiff's allegations of intentional interference with prospective business relations. Therefore, as was the case in *Isenberger,* the court determined that appellants' failure to answer the interrogatories warranted the severe sanction of default judgment. Indeed, any other sanction "would be totally ineffectual, due to the type of information which was in defendants' exclusive control and which [the court] felt plaintiffs were entitled to." *Id.*, 415 Pa. at 218, 203 A.2d at 138. See also: *Spilove v. Cross Transportation, Inc.,* 223 Pa.Super. 143, 146 n. 4, 297 A.2d 155, 157 n. 4 (1972) ("Entry of a default judgment is a proper course of action when a party unreasonably fails to answer interrogatories, thus preventing the cause of action from going forward.", citing *Isenberger*). *See generally:* Annotation, *Failure To Answer Discovery Questions,* 30 A.L.R.4th 9 (1984).

■ Appellants' principal objection to the interrogatory, namely the physician-patient privilege as guaranteed by 42 Pa.C.S. § 5929, was inapplicable. This statute provides: "No physician shall be allowed ... to disclose any information which he acquired in attending the patient in a professional capacity ... which shall tend to blacken the character of the patient." *Id.* The statute was designed to create a confidential atmosphere in which a patient will feel free to disclose all possible information which may be useful in rendering appropriate treatment. *Stenger v. Lehigh Valley Hospital Center,* 386 Pa.Super. 574, 586–587, 563 A.2d 531,

537 (1989), *alloc. granted,* 525 Pa. 620, 577 A.2d 891 (1990). However, courts have almost uniformly held that information revealing patients' names and addresses is not protected because it does not tend to blacken their character. *Woods v. National Life and Accident Ins. Co.,* 347 F.2d 760 (3d Cir.1965); *In re the June 1979 Allegheny County Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980); *Soltaniuk v. Metropolitan Life Insurance Co.,* 133 Pa.Super. 139, 2 A.2d 501 (1938); *Sweeney v. Green,* 116 Pa.Super. 190, 176 A. 849 (1935). See also: Packel & Poulin, *Pennsylvania Evidence* § 503.1 (1987) (courts have read the phrase "tend to blacken the character of the patient" narrowly.). The physician-patient privilege was similarly construed in *Padovani v. Liggett & Myers Tobacco Co.,* 23 F.R.D. 255 (E.D.N.Y.1959), wherein the court held:

> The mere *facts* that on certain occasions the plaintiff submitted himself for diagnosis and treatment, as well as the dates of same, the names and addresses of the physicians, whether or not diagnoses were reduced to writing, and related matters, are subject to disclosure so long as the subject communicated is not stated.

*Id.* at 257. See also: *McCormick On Evidence* 248–249 (3rd Ed.1984) ("While the information secured by the physician may be privileged, the fact that he has been consulted by the patient and has treated him, and the number and dates of his visits, are not within the shelter of the privilege."). Compare: *Kundus v. Johnson,* 39 Pa. D. & C.3d 425 (Alghy 1985).

The information which plaintiff sought to obtain was essential to its claim that defendants were "stealing" his patients. The disclosure of the fact that services had been rendered to a patient did not alone violate the patient's right of privacy. In those cases cited by appellants,[3] the state, either by grand jury, judicial request or agency regulation, had attempted to obtain personal details regarding the

**3.** These cases include *In re Allegheny County Grand Jury, supra; In re "B",* 482 Pa. 471, 394 A.2d 419 (1978); *Pa. Dental Association v. Com., Dept. of Health,* 75 Pa.Commw. 7, 461 A.2d 329 (1983).

treatment of patients. But see: *Kundus v. Johnson, supra.* By contrast, the information to be disclosed in the instant case consisted only of the names and addresses of persons being treated by the defendants. This information, to be used in a civil action for tortious interference with contractual relations, did not invade the privacy of the patients.

■ Appellants' final contention is that their patient lists are "trade secrets" and, therefore, privileged. Under Pa. R.C.P. 4012(a)(9), however, "there is no absolute privilege or unconditional bar as to disclosure of such matters. Whether disclosure is to be allowed and, if protection is to be afforded, the form of such protection, are matters to be determined according to the discretion of the court." Goodrich–Amram 2d § 4012(a):8.5. Here, defendants failed to establish that their patient lists were trade secrets. Therefore, the trial court did not err when it denied their request for a protective order and directed them to provide plaintiff with the names and addresses of their patients.

■ The determination of damages is a factual issue to be decided by the fact finder. *Delahanty v. First Pennsylvania Bank, N.A.,* 318 Pa.Super. 90, 117, 464 A.2d 1243, 1257 (1983). The burden of proving such damages is on the plaintiff. *Spang & Co. v. U.S. Steel Corp.,* 519 Pa. 14, 25, 545 A.2d 861, 866 (1988). "As a general rule, damages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." *Id.,* 519 Pa. at 25–26, 545 A.2d at 866. However,

recovery will not be precluded simply because there is some uncertainty as to the precise amount of damages incurred. It is well established that mere uncertainty as to the amount of damages will not bar recovery where it is clear that damages were the certain result of the defendant's conduct.... The basis for this rule is that the breaching party should not be allowed to shift the loss to the injured party when damages, even if uncertain

in amount, were certainly the responsibility of the party in breach.... (citations omitted). *Pugh v. Holmes*, 486 Pa. 272, 297, 405 A.2d 897, 909–910 (1979). See also: *Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 41–42, 383 A.2d 808, 812 (1978). This is peculiarly so in a case such as this in which the defendants have increased the difficulty of proving damages with precision by their intransigent refusal to permit discovery.

In the instant case, the trial court's award of damages in the amount of three hundred thousand ($300,000) dollars was based primarily on the testimony of expert witnesses whose opinions were based on comparisons of patient numbers, tax records, financial statements and Blue Shield profiles of MOS and appellants' office during the relevant periods. The testimony of these witnesses provided the trial court with sufficient information to permit a reasonable determination of profits lost by MOS as a result of defendants' diversion of patients. In addition, there was evidence that the profits of MOS had been eroded further because of a lack of referrals by patients who had been diverted.

One of the plaintiff's expert witnesses opined that plaintiff had also sustained a loss in the equity value of its practice. This was variously defined as a loss of good will and a loss of future profits. The trial court, although it did not attach a dollar value to this loss, expressly included it in its award of damages. The defendant-appellants contend that this was error.

Historically, Pennsylvania courts have deemed "good will damages" too speculative and, therefore, have disallowed recovery for prospective profits or loss of good will. This was changed, however, by the Supreme Court's decision in *AM/PM Franchise v. Atlantic Richfield*, 526 Pa. 110, 584 A.2d 915 (1990). There, the Court overruled prior decisions barring such recovery and said:

We are now in an era in which computers, economic forecasting, sophisticated marketing studies and demographic studies are widely used and accepted. As such,

> we believe that the rationale for precluding prospective profits under the rubric of "too speculative" ignores the realities. of the marketplace and the science of modern economics. We believe that claims for prospective profits should not be barred *ab initio*. Rather, plaintiffs should be given an opportunity to set forth and attempt to prove their damages.

*Id.*, 526 Pa. at 128, 584 A.2d at 925. Of course, the plaintiff must, in order to recover for such loss, establish that the loss was caused by defendants' conduct and provide the trier of fact with a reasonable basis on which to calculate such damages.

In the instant case, Dr. Bernard Fink, an expert called by plaintiff, estimated the loss in equity value or good will to be $166,194. He explained his determination as follows:

> If a part of that goodwill was taken, then, in fact, that's a damage, and that damage, it seems to me, can be calculated by assessing the goodwill of the practice before the damage was done, and then assessing—applying to it a growth rate—conservative growth rate based on the history of the practice and seeing what the practice should have been worth after the period of damage. If it was worth less, a simple subtraction should give us what the value of the damage itself. is.
>
> So these charts, this exhibit that I prepared, is basically a recapitulation of what I just said....

MOS suffered a present loss of profits because of the diversion of its patients. Because of that diversion, Dr. Fink testified, MOS will also suffer a loss of future business. Thus, defendants' tortious interference with MOS's patient relationships caused not only a present loss but also a future and recurring loss of business as well as a loss of future referrals. It was this that Dr. Fink estimated to be a loss of equity value which MOS would never be able to recoup unless it were compensated in damages.

Although the trial court's damage award may have been generous, it is supported by competent testimony. Therefore, this Court will not disturb the trial court's award of

damages by substituting its judgment for that of the trial judge.

The trial court properly refused to add interest or delay damages to its award of damages. The damages awarded were for lost profits not measured by market value or other definite standards. See: *Marrazzo v. Scranton Nehi Bottling Company,* 438 Pa. 72, 263 A.2d 336 (1970); Restatement (Second) of Contracts § 354.

Affirmed.