# Ben  v.  Schwartz

C.P. of Montgomery County, no. 94-19646.

*Bernadette Paul,* and *James A. Holzman,* for Commonwealth, Dept. of State, Bureau of Professional Affairs.

*Richard L. Gerson,* for plaintiffs.

*Anita Fulwiler O'Meara,* for defendant Depancis.

*Michelle T. Wirtner,* for defendant Schwartz.

CARPENTER, *J.,* May 16, 1996—

## FACTS AND PROCEDURAL HISTORY

This case comes before the Commonwealth Court upon the appeal of a non-party to the action. The Commonwealth of Pennsylvania, Department of State, Bureau of Professional Affairs, appellant, appeals this court's February 13, 1996 order dismissing appellant's motion to quash subpoena.

During the course of discovery in this malpractice action, the plaintiffs, Ewa and Arthur Ben, served a

subpoena on an employee of the appellant directing that employee to appear at the office of plaintiffs' attorney with the appellant's entire investigative file pertaining to defendant, Dr. Burton Schwartz. Appellant filed a motion to quash the subpoena. After considering appellant's motion, plaintiffs' response and hearing oral argument, this court dismissed the motion and directed appellant to comply with the subpoena.

Appellant appealed to Commonwealth Court, and this court directed appellant to file a concise statement of matters complained of pursuant to Pa.R.A.P. 1925(b). In its concise statement, appellant asserts that the information subpoenaed is privileged on several grounds, and thus not discoverable under the Pennsylvania Rules of Civil Procedure. None of the privileges asserted are applicable, though, and the information sought is within the permissible scope of discovery under Pa.R.C.P. 4003.1. Furthermore, this court's order dismissing appellant's motion to quash subpoena is an interlocutory order; therefore, the instant appeal should be quashed.

## ISSUES

I. *Whether This Appeal Should Be Quashed As Interlocutory?*

II. *Whether the Trial Court Properly Dismissed Appellant's Motion To Quash Subpoena?*

## DISCUSSION

I. *This Appeal Should Be Quashed As Interlocutory*

This court acknowledges that the Commonwealth Court has jurisdiction over final orders of the court of common pleas in all civil proceedings to which the Commonwealth is a party. 42 Pa.C.S. §762(a); *Fox v. Pennsylvania Securities Commission,* 17 Pa. Commw.

72, 75, 328 A.2d 573, 575 (1974). However, jurisdiction is confined to final orders. In the present case, this court's order dismissing appellant's motion to quash the subpoena is not a final, appealable order under the Rules of Appellate Procedure, as it does not put any of the litigants out of court. Rule of Procedure 341 provides that an appeal may be taken as of right from any final order and defines final order to include any order that:

"(1) disposes of all claims or of all parties; or

"(2) any order that is expressly defined as a final order by statute; or

"(3) any order entered as a final order pursuant to subsection (c) of this rule. Pa.R.A.P. 341(b)."

Subsection (c) further provides:

"When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim or third party claim or when multiple parties are involved, the trial court or other governmental unit may enter a final order as to one or more but fewer than all the claims or parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims or parties shall not constitute a final order." Pa.R.A.P. 341(c).

As the notes to this appellate rule explain, the 1992 amendments generally eliminate appeals as of right from orders not ending the litigation as to all claims and all parties. See note, Pa.R.A.P. 341. Prior to the amendments, there was case law which held that some orders were final which did not end the litigation. See note,

*supra.* Whether an order was interlocutory or final depended upon whether the order had the practical effect of putting the litigants out of court. See *Commonwealth v. Apollo,* 412 Pa. Super. 453, 456, 603 A.2d 1023, 1025 (1992); *Trackers Raceway Inc. v. Comstock Agency Inc.,* 400 Pa. Super. 432, 437, 583 A.2d 1193, 1195 (1990); *McGraw-Edison Co. v. Pennsylvania Human Relations Commission,* 108 Pa. Commw. 147, 153, 529 A.2d 81, 84 (1987); *Robertshaw Controls Co. v. Pennsylvania Human Relations Commission,* 67 Pa. Commw. 613, 616, 447 A.2d 1083, 1085 (1982).

Even prior to the amendment of Pa.R.A.P. 341, orders compelling compliance with a subpoena or refusing to quash a subpoena were held to be interlocutory and unappealable. See *In re Handwriting Exemplar of Casale,* 338 Pa. Super. 111, 114, 487 A.2d 877, 878 (1985); *Robertshaw, supra* at 617, 447 A.2d at 1086 (citing *In re Petition of Arlen Specter,* 455 Pa. 518, 317 A.2d 286 (1974); *Commonwealth v. Mellon National Bank and Trust Co.,* 360 Pa. 103, 61 A.2d 430 (1948); *Fox v. Pennsylvania Securities Commission,* 17 Pa. Commw. 72, 328 A.2d 573 (1974)). As the Commonwealth Court noted in *Fox,* "before a witness may gain appellate review of an order to enforce a subpoena, he must first refuse to testify and risk the penalties of contempt." *Id.* at 76, 328 A.2d at 576.

In *Casale,* though, the court pointed out that if an appellant does not wish to risk contempt, there is another choice. *Id.* at 115, 487 A.2d at 879. Appellant may request that the trial court certify the interlocutory order as appealable as "a controlling question of law as to which there is a substantial ground for difference of opinion and that an appeal [would] materially advance the ultimate termination of the matter." *Id.* at 115-16, 487 A.2d at 879-80 (quoting 42 Pa.C.S. §702(b)). In

*Casale,* the court quashed the appeal because the appellant did not request a certification, nor advance any argument that the order was appealable. *Id.* at 116, 487 A.2d at 880.

Although the Rules of Appellate Procedure have been modified since *Casale,* Pa.R.A.P. 341(c) similarly provides that an interlocutory order may be certified as appealable "upon an express determination that an immediate appeal would facilitate resolution of the entire case. . . ." Pa.R.A.P. 341(c). However, like the appellant in *Casale,* the appellant in the instant case has not requested a certification for appeal or attempted to argue the appealability of the order. Hence, the instant appeal should be quashed as interlocutory. Allowing parties to appeal orders compelling them to comply with subpoenas would only lead to litigation limbo. Parties might be forced to wait years for a decision to be rendered so that they could complete discovery. In addition, the amendments to Pa.R.A.P. 341 were enacted to eliminate piecemeal litigation. *Smaha v. Landy,* 162 Pa. Commw. 136, 146, 638 A.2d 392, 397 (1994), *allocatur denied,* 539 Pa. 660, 651 A.2d 546 (1994). Entertaining appellant's appeal at this stage of the litigation would subvert the intent embodied by those amendments.

II. *The Trial Court Properly Dismissed the Motion To Quash As the Information Subpoenaed Was Within the Scope of Discovery and Not Privileged*

Based on the foregoing analysis, the merits of the appellant's claim do not need to be addressed since its appeal is premature. However, assuming arguendo that the Commonwealth Court did review the appellant's claim on the merits, its claim of privilege would fail. The Pennsylvania Rules of Civil Procedure generally

permit a party to obtain discovery regarding any relevant matter not privileged, unless the scope of discovery is restricted by another provision of the rules. See Pa.R.C.P. 4001 et seq. One such restriction is found in Rule 4011(c) which states that: "No discovery or deposition shall be permitted which relates to matter which is privileged." Pa.R.C.P. 4011(c). However, in the present case, there is no privilege which insulates the information subpoenaed from discovery.

## Governmental-Executive Privilege

In invoking the common-law governmental-executive privilege, appellant apparently rummaged through the archives, blowing dust off antediluvian opinions in search of support for its position. In so doing, appellant unearthed *Appeal of Hartranft,* 85 Pa. 433, 27 A. 667 (1877) and *Marks's Appeal,* 121 Pa. Super. 181, 183 A. 432 (1936), *allocatur denied,* 195 A. 152 (1936). According to appellant, these cases support an absolute executive privilege. However, any reference to an absolute executive privilege is conspicuously absent from these decisions. Further, the facts are not even remotely similar to the case at hand. *Appeal of Hartranft* concerned official communications in regard to a riot. *Id.* at 441. *Marks* considered the privilege in the context of Department of Health records on the spread of tuberculosis. *Id.* at 182, 183 A. at 433. While the *Marks* court upheld the executive privilege, it did so as a qualified privilege. The court balanced the need of the litigant against the general public welfare and found that releasing the records might be injurious to the public at large. *Id.* at 192, 183 A. at 435.

Instead of perusing the yellowed pages of some of Pennsylvania's earliest reporters, though, appellant need only have glanced back a few years for a discussion

of executive privilege to *Commonwealth v. Kauffman,* 413 Pa. Super. 527, 605 A.2d 1243 (1992). In *Kauffman,* one of the parties to a civil action sought discovery of information in a prosecutor's file. The trial court held that the information was discoverable, and the Commonwealth, by special allowance, appealed to Superior Court. *Id.* at 537, 605 A.2d at 1248. The Superior Court affirmed the trial court after considering the applicability of several privileges, one being the executive privilege. The court noted that federal courts have, on a few occasions, relied on a common-law executive or governmental privilege to protect information garnered during ongoing government investigations. *Id.* at 534, 605 A.2d at 1246. The privilege is applicable when disclosure would be against public interest. *Id.* However, the court cautioned that the privilege was qualified and necessitated a balancing test of the competing interests of the government and the private litigant. *Id.* Further, the court observed that when the executive privilege has been examined in the context of law enforcement investigations, discovery has generally been permitted when the investigation and prosecution have been completed and has only been barred in ongoing investigations. *Id.* at 535, 605 A.2d at 1247.

In the case sub judice, appellant has merely laid claim to executive privilege without advancing any argument as to why it should apply. Disclosure of the investigative files pertaining to Dr. Schwartz would not be injurious to the public interest at large. Appellant has not stated any government interest in shrouding the files in secrecy which would outweigh the litigants' need for relevant information to advance the suit. In discussing executive privilege, the court in *Reese v. City of Pittsburgh,* 1 D.&C.3d 704 (1976), stated:

"the invocation of this somewhat less than well defined privilege should be viewed cautiously by the ju-

diciary lest such a 'privilege' become a vehicle for the subversion of individual rights. The right of a litigant to relevant information in the preparation of the litigant's case, however, is a fundamentally important right to insure the accomplishment of justice." *Id.* at 708-709.

We agree and decline appellant's invitation to apply the executive privilege to bar the litigants from discovery of the investigative files.

### Privilege Under Right to Know Act

Appellant claims that the subpoenaed investigative file is privileged under the Right to Know Act, 65 Pa.C.S. §66.1 et seq. Section 66.2 of the Act provides that the public records of an agency shall be open for examination and inspection by citizens of the Commonwealth. However, section 66.1 of the Act excludes from the definition of public record:

"any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties. . . ." 65 Pa.C.S. §66.1(2).

Appellant argues that the exclusionary language of this section bars the litigants from discovering the information because the investigative file is not a public record. In *Kauffman,* though, the Superior Court specifically rejected this same argument and held that the Right to Know Law is not applicable to discovery proceedings under the Pennsylvania Rules of Civil Procedure. *Id.* at 531, 605 A.2d at 1245. The court pointed out that the action was not commenced by citizens asserting their rights to examine public records under the Right to Know Act. *Id.* Rather, the request was supported by an underlying civil action, and thus, the scope of discovery was controlled by the Rules of Civil

Procedure. *Id.* In holding that the litigants were permitted to discover the files of a government agency, the court reasoned:

"[t]o hold otherwise, would insulate from discovery all information possessed by governmental agencies, no matter how relevant the information might be, unless the same information were also available upon request to any and all citizens of the Commonwealth. Such a result clearly was not contemplated by the legislature when it enacted the Right to Know Law. Indeed, such a result would not only emasculate the discovery provisions of the rules of civil procedure, but would also represent an unsound departure from established law." *Id.* at 533-34, 605 A.2d at 1246.

The instant case falls clearly within the holding of *Kauffman.* Thus, whether or not the investigative file is excluded from the definition of public record under the Right to Know Act is irrelevant. The information is not sought under this Act, and appellant cannot use the Act to shield the investigate files from discovery.

### Physician-Patient Privilege

Appellant claims that the investigative file subpoenaed contains confidential records of Dr. Schwartz's dental patients, who have both a statutory and common-law privacy interest in the nondisclosure of those records. However, it has been held that the statutory privilege found in 42 Pa.C.S. §5929[1] does not apply to dental records. *Pennsylvania Dental Association v.*

---

1. 42 Pa.C.S. §5929 states:

"No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act

*Commonwealth Dept. of Health,* 75 Pa. Commw. 7, 13, 461 A.2d 329, 332 (1983).

In *Pennsylvania Dental Association,* the Pennsylvania Dental Association, PDA, challenged the Department of Health's approval of a regulation in which Pennsylvania Blue Shield, PBS, required participating doctors to disclose a random selection of their patient files to PBS so that PBS could ensure that the dentists' charges complied with regulation. *Id.* PDA argued that this disclosure would violate their patients' privacy rights. In holding that the statutory physician-patient privilege did not apply, the court in *Pennsylvania Dental Association* observed that "[s]uch records would not normally divulge *communications* between the dentist and the patient, nor would the information on the records tend to blacken the character of the patient." *Id.* (emphasis in original)

The court did not, however, decide whether or not a constitutionally-based right of privacy applied to the dental records. *Id.* at 14, 461 A.2d at 332. The court concluded that the procedures employed by PBS to review the records safeguarded patient confidentiality, as the dentists were directed to withhold the names of non-PBS subscribers. *Id.* Furthermore, review by PBS was limited to the types of services, dates of services, charges made for services, and the amounts the doctor accepted as payment. *Id.* The court, therefore, determined that it did not need to decide whether or not patients had a constitutional right of privacy in their dental records, because even if they did, that right

---

in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."

was sufficiently protected by the limitations in the review procedure. *Id.*

Similarly, in the instant case, the Bens have asserted that their review of the dental records of Dr. Schwartz will be limited. In their reply to the motion to quash subpoena, they state that "the information being subpoenaed has to do with the *determination as to the type of treatment* which was afforded various patients of Dr. Burton Schwartz." (See reply to motion to quash subpoena and for protective order, paragraph 7.) (emphasis added) The Bens are not seeking confidential patient communications, the names of patients or other highly sensitive material. Nor does this case involve a psychotherapist-patient relationship in which the confidentiality of communications is integral to that relationship and to the treatment itself. Furthermore, it is difficult to conceive of any dental treatment records that a patient would be reluctant to have disclosed. Certainly, the procedures employed in crowning a tooth or performing a root canal would not pose a serious threat to the patients' privacy interest. If anything, it would be the mere fact of the complaint to appellant, rather than the content of the medical records, that the patient might not want disclosed. It is recognized that the investigative file may contain personal information about specific patients. If the Bens attempted to utilize this information, a consideration of the patients' constitutional privacy rights might be warranted.

Our research has not revealed any Pennsylvania appellate decisions which explicitly address the issue of whether there exists a constitutional right of privacy in the nondisclosure of dental records.[2] However, the

___

2. In *Miller Oral Surgery Inc. v. Dinello,* 416 Pa. Super. 310, 611 A.2d 232 (1992), *allocatur denied,* 533 Pa. 651, 624 A.2d 111

right of privacy is a well settled facet of the jurisprudence of this Commonwealth. *Stenger v. Lehigh Valley Hospital Center,* 530 Pa. 426, 434, 609 A.2d 796, 800 (1992). Pennsylvania courts have recognized the existence of a doctor-patient privilege rooted in both the United States and Pennsylvania Constitutions. See *e.g., Stenger, supra; In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980); *In re "B",* 482 Pa. 471, 394 A.2d 419 (1978). In *Stenger,* our Supreme Court stated:

"There is no longer any question that the United States Constitution provides protection for an individual's right of privacy. See *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Stanley v. Georgia,* 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Fraternal Order of Police, Lodge 5 v. Philadelphia,* 812 F.2d 105 (3d Cir. 1987); *United States v. Westinghouse Electric Corp.,* 638 F.2d 570 (3d Cir. 1980). At least two distinct types of privacy interests have been recognized. 'One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.' *Whalen, supra,* 429 U.S. at 599-600, 97 S.Ct. at 876-77. (footnote omitted) This court has recognized

---

(1993), the court considered whether dental patients' privacy rights were violated by disclosure of their names and addresses to the plaintiff in a civil action for tortious interference with contractual relations. *Miller, supra* at 318, 611 A.2d at 236. The court found that the information sought did not involve personal details regarding treatment of the patients, and the information was essential to plaintiff's claim. Therefore, disclosure did not invade the privacy interests of the patients. *Id.*

these same interests under the Pennsylvania Constitution. See *In re June 1979 Allegheny County Investigating Grand Jury,* 490 Pa. 143, 415 A.2d 73 (1980); *In re "B",* 482 Pa. 471, 394 A.2d 419 (1979)." *Id.* at 434, 609 A.2d at 800.

In *Stenger,* victims of AIDS sued a hospital and blood bank, alleging that they were negligent in the collection and dispensing of blood. *Id.* at 429, 609 A.2d at 798. It was determined that an AIDS infected donor had given blood which Donna Stenger received in a transfusion. *Id.* at 430-31, 609 A.2d at 799. The issues considered by the Supreme Court in *Stenger* were whether, during discovery, defendants could be compelled to produce the donor for questioning regarding the screening process and to produce the anonymous AIDS test results of any other recipients of the donor's blood. *Id.* at 433, 609 A.2d at 800.

The privacy right at issue in *Stenger* was avoiding disclosure of personal matters. *Id.* The court explained that "[t]he object of such a right is, in part, to protect an individual from revealing matters which could impugn his character and subject him to ridicule or persecution." *Id.* at 434, 609 A.2d at 801. In *Stenger,* though, the court found that because of the anonymous nature of the disclosure, there was no violation of the privacy interest. *Id.* "With no name associated with the disclosure, no disrepute can occur." *Id.* at 434, 609 A.2d at 801. One can hardly compare the indignities suffered by those afflicted with AIDS and those afflicted with an abscessed tooth. Clearly, disclosure of dental records will not inflict mental scars or subject the patient to ridicule. Thus, the privacy interest is not offended in this respect.

However, the court in *Stenger* also recognized that the privacy right includes the right to be let alone.

*Id.* at 435, 609 A.2d at 801. (citations omitted) The court stated, "[i]t is the infringement of this right which fuels the Blood Center's fear that future donations will be hindered if post-donation questioning of donors is permitted." *Id.* Appellant has articulated a similar fear. Appellant asserts that "[t]o open the government's investigations to this routine discovery will have a great chilling effect on complainants." Perhaps this fear would be warranted if the Bens were permitted to invade the dental patients' right to be let alone by questioning or otherwise contacting the complainants. However, this fear could easily be quelled by protecting the confidentiality of those patients' names.

The potential invasion of the privacy right in the present case clearly does not rise to the level of *Stenger.* The case of *In re June 1979* provides more guidance. In *In re June 1979,* a hospital administrator had refused to comply with a grand jury subpoena of tissue reports for listed patients in an investigation involving the misuse of county funds, equipment, facilities and employees. *Id.* at 147, 415 A.2d at 75. After finding that the subpoenaed reports contained no statutorily protected communications, our Supreme Court considered the viability of a constitutionally-based privacy interest of the listed patients. *Id.* at 151, 415 A.2d at 78. The court warned that disclosure of medical data concerning individual patients could, in some instances, "pose such a serious threat to a patient's right not to have personal matters revealed that it would be impermissible under either the United States or Pennsylvania Constitution." *Id.* at 151, 415 A.2d at 78. However, the court concluded that neither the United States nor Pennsylvania Constitution was offended by requiring the production of the subpoenaed reports to the grand jury. *Id.* at 152, 415 A.2d at 78. In the present case, we likewise find

that requiring appellant to comply with the subpoena and produce the investigative files in question does not impermissibly encroach upon the dental patients' privacy rights.

Finally, the court in *In re June 1979,* maintained that if the subpoenaed reports were needed as evidence at subsequent trials, an appropriate means of protecting the confidentiality of the patients' records could be devised. *Id.* at 151, 415 A.2d at 73. Likewise, in the instant case, if necessary, a means of ensuring confidentiality and protecting the dental patients' anonymity can be devised through in-camera inspection or otherwise.

## Unreasonable Annoyance, Oppression, Burden or Expense

As a last ditch effort to avoid the subpoena, appellant claims compliance would cause unreasonable annoyance, burden or expense, and therefore, the investigative file is not discoverable pursuant to Pennsylvania Rules of Civil Procedure 234.4(b) and 4011(b). Pa.R.C.P. 234.4(b) empowers the court, after hearing, to issue a protective order when a subpoena, notice to attend or notice to produce would cause a party or witness "unreasonable annoyance, embarrassment, oppression, burden or expense." Pa.R.C.P. 234.4(b). Similarly, Rule 4011(b) provides that discovery or deposition shall not be permitted which would cause these hardships. Pa.R.C.P. 4011(b).

In addressing appellant's claim, we find persuasive the analysis of the Allegheny Court of Common Pleas in *Azen v. Lampenfield,* 18 D.&C.3d 574 (1981). In *Azen,* the City of Pittsburgh refused to comply with a subpoena which requested their investigative file pertaining to a fire. *Id.* The court held:

"discovery will not be barred under Rule 4011(b) merely on the basis of a general claim that production of the investigative file[s] will unreasonably interfere with the city's efforts to conduct other investigations or will cause unreasonable annoyance, embarrassment, and burden to persons who cooperated with the city. If the city wishes to invoke the protections of Rule 4011(b), it must offer specific information showing that a discovery order would unreasonably annoy, embarrass, or burden either the city or any other person." 18 D.&C.3d at 579-80. (footnote omitted)

In support of its reliance on Rules 4011(b) and 234.4(b), appellant claims that if private litigants are permitted to discover their files, appellant's limited staff and financial resources will be diverted, and it will be unable to fulfill its primary purpose and duty of investigating and disciplining licensees. Like the City of Pittsburgh in *Azen,* appellant fails to state specifically how its resources will be "diverted" by compliance with the subpoena or how its government functions will be hampered. To the contrary, the information sought is readily available to appellant.

Perhaps more importantly, this court has already found that no constitutional right of privacy has been transgressed by requiring appellant to comply with the subpoena. In *Stenger,* the court refused to entertain the Blood Center's 4011(b) argument. The court held that "[t]hat rule is merely a codification of this court's analysis of the constitutional right to privacy and as such provides no more protection than the constitutional right provides." *Id.* at 439, 609 A.2d at 803. In light of this holding, we find that appellant's reach for the rule book does not help them. This last card has been trumped, and appellant must now lay out its hand and comply with the subpoena.

306

## CONCLUSION

Based on the foregoing analysis this court's February 13, 1996 order denying appellant's motion to quash subpoena and directing the Commonwealth to produce either Ada Miller or Dorothy Chidress with the Bureau of Professional and Occupational Affairs' investigative file relating solely to the defendant, Burton Schwartz D.D.S. should be affirmed.