**Thomas GEORGE and Concept Chemical Corp. d/b/a TG Chemicals, Appellants**

**v.**

**John SCHIRRA and FBC, Inc., Appellees.**

Superior Court of Pennsylvania.

Argued Sept. 18, 2002.

Filed Dec. 18, 2002.

Richard B. Sandow, Pittsburgh, for appellants.

Stanley M. Stein, Pittsburgh, for appellees.

Before: LALLY–GREEN, BENDER, and GRACI, JJ.

BENDER, J.:

¶ 1 This is an appeal from an order denying reconsideration of a discovery order regarding alleged trade secrets. Appellants allege four errors on the part of the trial court: the court improperly allowed the discovery of Home Lab Notes containing confidential trade secrets of Appellant; the Home Lab Notes are not relevant to the current litigation; the master's finding that the Home Lab Notes "may relate in some way" to the matters of the current litigation is incorrect and an insufficient reason for ordering their disclosure and the order requiring the disclosure was premature. We affirm.

¶ 2 The present case alleges misappropriation and use by Appellees of protectable trade secrets of Appellants, namely "flow-aid" products—products which are instrumental in the steel making process. In the 1970's and 1980's, Appellant George was employed by Jones & Laughlin Steel (J & L) as an engineer. During his employment with J & L, one problem facing J & L in the production of steel involved the clumping, or agglomeration, of lime and other powdered constituents of steel manufacturing. George became involved in experiments to alleviate the agglomeration problem at J & L and, he alleges, further conducted "independent" tests at his home.

¶ 3 Sometime in the mid–1980's, George left J & L and formed his own company producing "flow-aid" products. Appellee John Schirra was employed in the quality assurance department of ESM, II Inc. (ESM). Appellants allege that while employed with ESM, Schirra obtained certain trade secrets relating to flow-aids from George which were disclosed in confidence. Schirra subsequently left ESM and joined Appellee, FBC, Inc. Appellants allege that Schirra divulged George's confidential trade secrets to principals at FBC, which then used them to compete unfairly against Appellants. In response, Appellants filed the instant suit seeking monetary damages and an injunction.

¶ 4 Perhaps not unexpectedly given the nature of the instant litigation, many dis-

putes arose during the pre-trial discovery process, including some relating to the discovery of materials Appellants believed to be trade secrets additional and unrelated to those allegedly appropriated by Appellees. More specifically, the primary issue of contention dealt with production of George's "Home Lab Notes," notes allegedly relating to experiments conducted on George's own time at his home, which, he asserts, are his own proprietary work product. To deal with the various discovery disputes, a special master was appointed on December 8, 1999, to hear evidence and arguments as to the disputes as well as to issue a report and recommended resolution. During that process, Appellants argued that the Home Lab Notes were not relevant to the present litigation and were entitled to protection under Pennsylvania law. Appellees countered that the Home Lab Notes are indeed germane to potential defenses they would employ and that Appellants could not be allowed to determine what evidence was and was not relevant to the litigation. The special master issued his report and recommendation on May 29, 2001.

¶ 5 Appellants filed exceptions to the report and recommendation, which were denied on August 3, 2001. Appellants responded by filing a motion for reconsideration on August 23, 2001. On August 30, 2001, the motion was granted for purposes of revisiting the decision, yet, the motion was quickly denied on September 4, 2001. However, in consideration of Appellants' claims that the information constituted trade secrets, the court ordered that the documents in dispute be produced under a protective order to be viewed only by Appellees' counsel and an expert retained for purposes of reviewing the notes and determining their potential relevance to the trial. The protective order further provided that the information contained in the notes could not be revealed to Appellees or utilized without a subsequent court order. The present appeal followed.[1]

¶ 6 As a preface to the discussion that will follow, we would point out that, as a general rule, discovery is liberally allowed with respect to any matter, not privileged, which is relevant to the cause being tried. *See generally,* Pa.R.C.P. 4003.1, *Land v. State Farm Mutual Insurance Co.,* 410 Pa.Super. 579, 600 A.2d 605 (1991). Although Appellants are correct that trade secrets are afforded protection under the law, "there is no absolute privilege or unconditional bar as to disclosure of such matters." *Miller Oral Surgery, Inc. v. Dinello,* 416 Pa.Super. 310, 611 A.2d 232, 236 (1992). Moreover, the question "whether disclosure is to be allowed and, if protection is to be afforded, the form of such protection, are matters to be determined according to the discretion of the court." *Id.* Most importantly, stewardship of the trial, including discovery rulings, are "uniquely within the discretion of the trial judge," *Air Products and Chemicals, Inc. v. Johnson,* 296 Pa.Super. 405, 442 A.2d 1114, 1129 (1982), and, consequently, the court's rulings will not be reversed unless they are deemed to represent an abuse of discretion. *Id.*

¶ 7 Citing to *Hagy v. Premier Manufacturing Corp.,* 404 Pa. 330, 172 A.2d 283 (1961), Appellants first assert that the court cannot allow discovery of trade secrets by a competitor. While *Hagy* does state "that discovery which would reveal confidential information or trade secrets to a competitor, . . . should

---

1. We note that the order appealed from is deemed immediately appealable under the "collateral order doctrine." *See Dibble v.*

*Penn State Geisinger Clinic,* 806 A.2d 866 (Pa.Super.2002).

not be allowed," *Id.* at 284–85, the passage is offered as a general, almost dictum-like, statement. The above statement cannot be regarded as a definitive rule of law that comprehensively prohibits any discovery touching upon trade secrets. Indeed, as the other cases Appellants cite to attest, discovery of trade secrets has been allowed post-*Hagy*. In both *Air Products, supra.,* and *Miller Oral Surgery, supra.,* both dealing with trade secrets, some form of discovery was allowed over contentions that such discovery was not permitted. Thus, clearly, the mere fact that the subject matter of discovery might be trade secrets does not necessarily exempt the information from the discovery process.

¶ 8 Appellants next assert that the "Home Lab Notes" are not material to the litigation at hand. In a closely related argument, Appellants follow-up that argument with the contention that seemingly suggests that there exists a different discovery standard with respect to trade secrets. We address the second contention first.

¶ 9 As acknowledged above, while trade secrets are entitled to protection, we do not believe Appellants have demonstrated that there exists a different relevancy standard with respect to discovery of material that might constitute trade secrets. Appellants cite to *Hagy, supra.,* to support their contention that the proper discovery standard for trade secrets is "material and relevant." However, a search of the content of that opinion reveals that the phrase "material and relevant" is never used. Moreover, the term relevant is used only with respect to identifying the general standard for discovery which, as indicated above, is "relevant to the subject matter involved in the pending action." *Id.* at 284. Thus, *Hagy* does not really indicate that the relevancy standard is any different for trade secrets than it is for discovery matters in general. Moreover, the relevancy standard during discovery is necessarily broader than it is for admission at trial. If it were not, there would be tremendous potential for relevant information and admissible evidence to be missed by the parties. The informational dragnet during discovery is meant to be wider so that all relevant and admissible evidence can be discovered pre-trial.

¶ 10 As to application of the relevancy standard in this case, it is true that in determining that the relevancy standard was met here the master and the court did use the phrase "may relate in some way." However, the usage of these words does not necessarily convey a broadening of the general discovery standard. In the present case there is clearly a common thread connecting Appellant's Home Lab Notes and the subject matter of the present litigation. The matter being tried is Appellees' alleged appropriation of trade secrets relating to "flow aid" products. The notes at the heart of this controversy relate to "flow aid" products developed by Appellant George. Clearly the general standard governing discovery matters is met here.

¶ 11 Appellant next asserts that the Home Lab Notes are not relevant to the present case. Initially, we must state that we are reluctant to allow a participant in a lawsuit to dictate the determination of what is, and what is not, relevant. To allow this practice is akin to allowing a participant in a contest to referee the contest. In the contest of litigation, the judge, and the judge alone, acts as the referee. Nevertheless, we have stated above our belief that the Home Lab Notes deal with the same subject matter as the underlying lawsuit and are relevant within the meaning of that term for discovery purposes. That is all that is necessary at this stage of the proceedings. Although the Home Lab Notes, or the information

contained therein, may not ultimately be admissible at trial or may not prove germane to the matters that will be litigated, we believe the relevancy standard applicable to discovery matters has been met.

¶ 12 Appellants next contend that the discovery order is premature. We disagree. The appropriate time for discovery is pre-trial, which is the current status of the case. Since the complaint initiating this cause of action was filed on December 6, 1996, we would add that the present case is hardly progressing apace. Nevertheless, Appellants assert that if disclosure is required it should not occur until the time of trial and should occur under conditions protective of their trade secrets. Again, we disagree. The purpose of pre-trial discovery is to accumulate information and evidence, to determine the relevance to trial of information obtained in the discovery process and to plan trial strategy. This purpose cannot be served by waiting for trial to start before conducting discovery. Additionally, the court imposed conditions which should provide additional protections to Appellants' information. The Home Lab Notes will be disclosed to only counsel and an expert familiar with the subject matter who will be more capable of determining the relevance of the documents. If there is a need for further dissemination of the information, the court will be in a position to consider options that will balance the need to disclose the information at trial against the Appellants' interest in keeping the information confidential.

¶ 13 For the above reasons, we conclude that no abuse of discretion occurred below. Accordingly, we affirm the order under appeal.

¶ 14 Order affirmed.