

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-7-2007

# Williams v. Kort

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1937

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Williams v. Kort" (2007). *2007 Decisions*. Paper 1132.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1132

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-1937

ANTHONY M. WILLIAMS

v.

DR. JOSEPH KORT, SCI-Coal Township; KAREN OHLER, SCI-Somerset;
DR. BAKER, SCI-Albion; MAJOR R. NEISWONGER, SCI-Albion; DAVID
MARTIN, SCI-Coal Township; BRADLEY LORAH, SCI-Coal Township

Anthony Mustafa Williams,

Appellant

On Appeal From the United States District Court
For the Middle District of Pennsylvania
(D.C. Civ. No. 02-cv-02320)
District Judge: Honorable Sylvia H. Rambo

Submitted Under Third Circuit LAR 34.1(a)
May 4, 2007

Before: FISHER, ALDISERT AND WEIS, <u>CIRCUIT JUDGES</u>.

(Filed: May 7, 2007)

OPINION

PER CURIAM

Anthony Williams filed a civil rights action against prison medical and security

personnel in December 2002 asserting various constitutional violations related to the medical treatment of his injured knee. Williams appeals following entry of orders by the United States District Court for the Middle District of Pennsylvania denying his motion to amend his civil rights complaint with regard to some claims, and ultimately granting the defendants' motions to dismiss or the defendants' motion for summary judgment on all claims. We will affirm in part and vacate in part.

Williams alleges that he twisted his knee at the State Correctional Institution at Coal Township on June 25, 2000, and injured it there again on August 5, 2000. Defendant Kort and other medical personnel treated Williams with painkillers after x-rays revealed that he had not broken any bones. In the time period between the two injuries, Williams complained of extreme pain, swelling, limited movement and buckling of his knee. Nurses and defendant Bradley Lorah,[1] a physician's assistant, continued to prescribe painkillers and told Williams that they would inform Dr. Kort of his condition. On September 30, 2000, Dr. Kort told Williams that he would order an MRI and refer him to an orthopedic doctor in a few months if his knee did not improve. Williams subsequently saw medical personnel and complained about his knee and was told that only Dr. Kort could order an MRI.

On August 22, 2001, Williams was transferred to the State Correctional Institution at Somerset. Defendant Karen Ohler, a physician's assistant, treated Williams there.

---

[1]Lorah was misnamed David Martin in Williams' complaint.

Williams told Ohler that he had extreme pain, swelling, and limited movement, that his knee buckled, and that the painkillers were ineffective. Williams alleges that, during his appointment, Ohler did not look at the knee and, based upon his medical file, determined that he did not need painkillers. Ohler prescribed exercises which Williams states aggravated his knee. He then saw nurses who resumed his painkillers.

Williams was transferred to the State Correctional Institution at Albion on January 22, 2002. On June 5, 2002, he was taken to an outside hospital for an MRI and saw an orthopedic doctor. He was diagnosed with a bilateral meniscus tear and surgery was scheduled for September 2002.

On September 2, 2002, Williams was involved in a physical altercation with correctional officers and was placed in the restrictive housing unit. A physician's assistant then told Williams that his surgery was cancelled at the request of the security department. Williams later learned that defendant Neiswonger, an officer in the security department, had requested its cancellation. Prison officials denied Williams' grievance regarding the cancellation, explaining that the prison Medical Director, defendant Baker, stated that the surgery was not urgent and would be rescheduled.

Williams claimed that Kort, Ohler and Lorah, by their actions and/or failure to act, caused him pain without any medical justification and that, numerous times, they insisted on continuing courses of treatment that they knew were ineffective, intentionally causing him unnecessary pain in violation of the Eighth Amendment. He further claimed that their conduct constituted "intentional and negligent torts." Complaint at 15. Williams

3

also claimed that Baker and Neiswonger were deliberately indifferent to his medical needs and that they conspired to cancel his surgery in retaliation for the assault, knowing that he would be in continued pain. Williams sought a declaratory judgment stating that the defendants violated his rights, as well as compensatory, punitive and nominal damages. Williams also sought an order directing that his knee surgery take place. He received the surgery on March 21, 2003, while this action was pending in the District Court.

The District Court dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim. On appeal, we vacated the District Court's judgment, concluding that (1) Williams' complaint sufficiently alleged a claim for relief under the Eighth Amendment against prison medical personnel,[2] and (2) because it was not clear that amendment would be futile, Williams should be permitted to amend his complaint with regard to his retaliation claim. We also concluded that Williams' allegations of conspiracy failed to state a claim. See Williams v. Kort, C.A. No. 03-2864.

Williams then moved to file an amended complaint. The District Court permitted Williams to substitute Bradley Lorah for defendant David Martin and to add state law tort claims of medical malpractice, negligence, and willful misconduct, based upon the same

---

[2]This excludes defendant Neiswonger – the opinion specifically states that Williams does not state an Eighth Amendment medical claim against Neiswonger.

facts underlying Williams' Eighth Amendment claims.[3]  The District Court denied Williams' motion with regard to the retaliation claim, concluding that his additional allegations did not cure the defects in his initial complaint.  The District Court also agreed with the defendants that Williams failed to exhaust administrative remedies with regard to the three new retaliation claims he proposed against Neiswonger and other corrections officers, and denied Williams' motion as to those claims.  At this point in the proceedings, Williams' remaining claims against the defendants were his Eighth Amendment medical claims against all defendants except Neiswonger and his related state law claims.

In November 2004, the medical defendants filed a motion to dismiss as to all defendants, or alternatively, for summary judgment as to all defendants.  As to the constitutional claims, the District Court granted the motion to dismiss with respect to defendants Ohler and Lorah, and granted summary judgment with respect to defendants Kort and Baker.  The District Court also concluded that considerations of judicial economy, convenience, and fairness to the parties dictated that it continue to exercise supplemental jurisdiction over the state law claims.[4]

In April 2005, the District Court issued an order requiring that Williams file a

---

[3]Williams' original complaint alleged that the defendants' conduct "constitutes negligence and intentional torts," so to some extent, these "added" claims serve to refine his initial state law claims.

[4]Williams filed a motion to reconsider the District Court's decision, which the District Court denied.

"certificate of merit" regarding his state law claims pursuant to Pennsylvania Rule of Civil Procedure 1042.6. Although the District Court later agreed with Williams that the certificate of merit requirement did not apply because it was enacted after the filing of the complaint, the Court nevertheless required Williams to file an expert report because "expert testimony will be required if th[e] case proceeds to trial."[5] District Court memorandum of 12/8/05 at 3. The District Court's order specified that, if Williams failed to file an expert report by February 27, 2006, the case would be dismissed.

On January 9, 2006, Williams filed a motion asking the District Court to, *inter alia*, locate a pro bono attorney for Williams and order the Pro Bono Panel of the relevant chapter of the Federal Bar Association to appoint an orthopedic doctor to prepare and file the expert report for Williams. Noting the measures it had already taken to assist Williams,[6] the District Court denied the motion. Williams did not submit an expert report, and on March 1, 2006, the defendants moved to dismiss. The District Court granted the motion pursuant to Federal Rule of Civil Procedure 41(b).

Williams appealed. We declined to dismiss the appeal pursuant to 28 U.S.C. 1915(e)(2)(B), and by order entered October 12, 2006, directed the parties to address

---

[5]Williams also filed a motion to reconsider this decision, which the District Court denied.

[6]At the time of Williams' motion, the District Court had already requested assistance from the Pro Bono Panel. After the Panel's physician and experienced medical malpractice attorney reviewed Williams' case and medical records, the Panel declined to provide representation.

whether the District Court's dismissal pursuant to Rule 41(b) could be affirmed although the Court did not address the factors set forth in Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863 (3d Cir. 1984).

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291.  With regard to the District Court's order dismissing some claims pursuant to Rule 12(b)(6), we exercise plenary review, and accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them.  See Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir. 2001); Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).  With regard to the decision to grant summary judgment, we also exercise plenary review, and must determine whether the record, when viewed in the light most favorable to Williams, shows that there is no genuine issue of material fact and that the defendants were entitled to judgment as a matter of law.  See Torres v. Fauver, 292 F.3d at 145 (3d Cir. 2002).  We review the District Court's decision to deny Williams' request to amend for abuse of discretion.  See Lake v. Arnold, 232 F.3d 360 (3d Cir. 2000).  We can affirm the District Court's order on any ground supported by the record.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).

*Motion to Amend*

The District Court did not abuse its discretion in denying Williams' motion to amend with regard to Williams' three proposed retaliation claims against Neiswonger. Amendment would have been futile because Williams failed to exhaust administrative

7

remedies with regard to these claims.

Williams' central retaliation claim is that Neiswonger requested the cancellation of his surgery in retaliation for the September 2002 altercation. The District Court concluded that the amended complaint failed to state a retaliation claim because Williams did not engage in constitutionally protected conduct. We do not agree with the District Court's characterization of Williams' claim as alleging a constitutional right "to fight with corrections officers." Williams clearly claims to be exercising a constitutionally protected right to defend himself when assaulted by a correctional officer. However, the only court of appeals that has addressed this issue has concluded that prisoners do not have a federal constitutional right to self-defense. See Rowe v. DeBruyn, 17 F.3d 1047, 1052-53 (7th Cir. 1994), cert. denied, 513 U.S. 999 (1994). We agree.

*Eighth Amendment Claims*

Williams claims that Kort, Ohler and Lorah, by their actions and/or failure to act, caused him pain without medical justification and that, numerous times, they insisted on continuing courses of treatment that they knew were ineffective, intentionally causing him unnecessary pain. Williams also claims that Baker was deliberately indifferent to his medical needs when he cancelled Williams' scheduled knee surgery.

Allegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections. See Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Disagreements over medical judgment or treatment also cannot form the basis of an Eighth Amendment claim. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In

8

order for Williams to prevail on his Eighth Amendment claim regarding his medical treatment, he must show that prison officials were deliberately indifferent to a serious medical need. See Estelle, 429 U.S. at 104. We have found "deliberate indifference" where prison officials delay medical treatment for non-medical reasons or continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm. See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); White, 897 F.2d at 109. We note that the medical defendants do not dispute whether Williams' knee injury amounts to a serious medical need, and concur with the District Court's acceptance of Williams' assertion that his medical needs were serious. Therefore, the only issue contested is whether the defendants acted with deliberate indifference to Williams' serious medical needs.

*Summary Judgment*

The District Court properly concluded that defendants Kort and Baker are entitled to summary judgment. With regard to Dr. Kort, Williams does not dispute that he was seen by Kort and several physician's assistants throughout his time at SCI-Coal Township, but alleges that Kort insisted on continuing courses of treatment that he knew were painful or ineffective. When vacating the District Court's initial dismissal for failure to state a claim, we specifically referenced the eleven-month period between Kort's telling Williams he would take certain action if the injury did not improve (ordering an MRI and referring Williams to a specialist) and Williams' transfer from SCI-Coal Township. See Williams v. Kort, C.A. No. 03-2864. Dr. Kort never ordered an

9

MRI or referred Williams to a specialist.

The parties' submissions show that this time period cannot be characterized as a delay of medical treatment for non-medical reasons or a continuation of an ineffective and/or painful treatment in violation of the Eighth Amendment. As the District Court notes, Kort later determined that an MRI and referral to an orthopedic specialist would not be necessary. Medical records for this time period indicate that Williams was (at least on some occasions) feeling well, finding the pain to be improving, and moving without discomfort. These records reveal that Kort's treatment decisions were not constitutionally deficient. See Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) (so long as physician exercises professional judgment, physician's behavior will not violate prisoner's constitutional rights).

The District Court thoroughly explained why Dr. Baker's decision to reschedule Williams' knee surgery due to security concerns did not violate Williams' Eighth Amendment rights. We need not supplement that analysis.

*Motion to Dismiss*

The District Court's decision to grant the motion to dismiss as to Lorah and Ohler requires us to examine Williams' allegations regarding each defendant. The District Court stated that Williams made only one allegation as to Lorah (that while Williams was under his care, "nothing [Lorah] did was working"), and concluded that this bare allegation failed to state an Eighth Amendment claim. While we agree that such an allegation would be insufficient, Williams also asserts that Lorah intentionally did not

10

treat Williams' pain, knowing that he would suffer. See Complaint at 10. This allegation surely states a claim that Lorah was deliberately indifferent to Williams' serious medical needs. In keeping with this Court's longstanding practice of construing pro se pleadings liberally, we think it proper to view the complaint as having pled an Eighth Amendment claim against Lorah.

However, this error does not warrant remand as the record reveals that Lorah would be entitled to summary judgment on this record.[7] Lorah, a physician's assistant, treated Williams during the same relevant time as – and in conjunction with – Dr. Kort. The same medical records which reveal that Kort's determination that Williams did not require an MRI or referral to a specialist did not amount to deliberate indifference to Williams' medical needs, inform our evaluation of Lorah's treatment. See Medical Appellees' Brief at 30. Thus, any assessment by Lorah that Williams did not require an MRI or a specialist referral does not violate the Eighth Amendment. Lorah also told Williams that he would relay Williams' medical complaints to Dr. Kort; Williams does not allege that Lorah failed to do so. Accordingly, there is no genuine issue of material fact as to whether Lorah continued a course of treatment he knew was "painful, ineffective, or entailed substantial risk of serious harm." White, 897 F.2d at 109 (3d Cir. 1990).

_____

[7]We note that the motion to dismiss, or alternatively, for summary judgment, specifically argues that *all* medical defendants are entitled to summary judgment. Accordingly, Williams had adequate opportunity to respond to the argument that defendant Lorah is entitled to summary judgment.

Finally, we disagree with the District Court's conclusion that Williams failed to state a claim as to Ohler. Here too, we find that dismissal pursuant to Rule 12(b)(6) is not warranted. However, review of the relevant medical records supports the defendants' description of Ohler's treatment of Williams as consisting of just one visit in which Ohler recommended "management through exercise and strengthening of what was, on that single visit, a non-symptomatic patient with a history of knee complaints." See Medical Appellees Brief at 23. As with Defendant Lorah, we need not remand because Ohler would be entitled to summary judgment.

*State Law Claims*

Williams takes issue with the District Court's order requiring him to submit an expert report to support his medical malpractice claims. Management of discovery is uniquely within the discretion of the trial judge. See George v. Schirra, 814 A.2d 202, 204 (Pa. Super. 2002); see also In re Fine Paper Antitrust Litigation, 685 F.2d 810, 817 (3d Cir. 1982) ("matters of docket control and conduct of discovery are committed to the sound discretion of the district court"). We agree with the District Court that expert testimony will be required from Williams if the case goes to trial. See Mitzelfelt v. Kamrin, 584 A.2d 888, 892 (Pa. 1990). Accordingly, we cannot say it was an abuse of discretion for the District Court to require Williams to submit an expert report prior to trial. See In re Fine, 685 F.2d at 817 (appellate court will not interfere with discovery decisions unless the procedures result in actual and substantial prejudice to the complaining litigant).

12

Because Williams failed to provide the required expert report, the District Court granted the defendants' motion to dismiss, citing its authority under Federal Rule of Civil Procedure 41(b). Rule 41(b) states, "for failure of the plaintiff . . . to comply with . . . any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Though we "defer to the District Court's discretion, dismissal with prejudice is only appropriate in limited circumstances and doubts should be resolved in favor of reaching a decision on the merits." Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002). We have also repeatedly emphasized that the "drastic sanction" of dismissal is disfavored except in the most egregious circumstances. See United States v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 161 (3d Cir. 2003); Poulis v. State Farm Fire & Casualty Co., 747 F.2d 863, 866 (3d Cir. 1984). Accordingly, before dismissing an action, a district court is required to make explicit findings regarding the factors enumerated in the Poulis decision. See $8,221,877.16 in U.S. Currency, 330 F.3d at 162 ("we have always required consideration and balancing of *all six* of the factors [by the district court]") (emphasis in original); Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987) (remanding because the district court "did not pursue the analysis mandated by our precedent"); Poulis, 747 F.2d at 868 ("we will be guided by the manner in which the trial court balanced the . . . factors"). The Poulis factors to be weighed by the District Court are: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party . . . was

13

willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim. Id.

The role of an appellate court is to determine whether the District Court properly balanced the Poulis factors and whether the record supports its findings. See Livera v. First Nat. State Bank of New Jersey, 879 F.2d 1186, 1194 (3d Cir. 1989) (citation omitted); see also Emcasco, 834 F.2d at 74 (noting that, "[i]n order that we may properly exercise our function of reviewing for abuse of discretion, we have [] required the district court to make explicit findings concerning the factors it must consider in rendering judgment by . . . dismissal"). Here, however, the District Court neither cited Poulis nor evaluated the extensive history of this case in light of the Poulis factors before dismissing pursuant to Rule 41(b).

Accordingly, we conclude that the District Court erred in dismissing the complaint with prejudice without making the requisite findings. Livera, 879 F.2d at 1193. Though dismissal pursuant to Rule 41(b) ultimately may be warranted under the Poulis factors as appellees suggest, under these circumstances, our precedent counsels that it would be improper for us to perform a Poulis evaluation, as the test requires factual findings not within the parameters of appellate review. See Liveria, 879 F.2d at 1194; see also $8,221,877.16 in U.S. Currency, 330 F.3d at 162 (remanding so that district court could consider two factors it had not considered, rather than re-balancing all factors at appellate stage).

The medical appellees cite our decisions in Spain v. Gallegos, 26 F.3d 439 (3d Cir.

1994) and Guyer v. Beard, 907 F.2d 1424 (3d Cir. 1990), in support of their argument that analysis of the Poulis factors is unnecessary when a litigant's conduct makes adjudicating the case impossible. However, there are qualitative distinctions between Williams' behavior and the behavior of the Spain and Guyer plaintiffs.[8] To the extent that Spain and Guyer can be understood as obviating the district court's obligation to conduct a Poulis analysis where the plaintiff clearly intends to abandon the case (Spain), or where the plaintiff's behavior is so egregious as to constitute an abandonment of the case (Guyer), such a conclusion is not dictated here. Williams indicates that he has made significant efforts in an attempt to obtain expert testimony and clearly wishes to pursue his claims. Although Williams has not obeyed the District Court's order directing him to submit an expert report, the manner in which he has disobeyed that order is significant when evaluating the question of sanctions. See Spain, 26 F.3d at 455 (1994) (contrasting Spain's wilful refusal to prosecute with "*situations in which a court must balance factors because the plaintiff does not desire to abandon her case but has encountered problems in going forward*") (emphasis added); Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 343 (3d Cir. 1982) (behavior not contumacious where effort made to comply with court order). We cannot say that Williams' behavior has been so egregious as to make

[8]In Spain, the plaintiff, who was represented by counsel, specifically asked the judge about the consequences of not prosecuting, and then several days later, immediately after being warned by the court that she faced dismissal for failure to prosecute, declared her decision not to proceed. See 26 F.3d 439 at 445. In Guyer, the plaintiff was an inmate who repeatedly refused to sign the form which would enable him to receive mail from the court and other parties in the case. See 907 F.2d 1424, 1426-27.

15

self-evident the factual findings and analysis that are the province of the District Court under Poulis.

Accordingly, we will vacate the District Court's order to the extent it dismisses Williams' state law claims pursuant to Rule 41(b), and will remand for further proceedings. We will affirm in all other respects. The medical appellees' motion for partial withdrawal of argument is granted.